308 U.S. 433 (1940)
KALB ET UX.
v.
FEUERSTEIN ET UX.[*]
No. 120.
Supreme Court of United States.
Argued December 15, 1939.
Decided January 2, 1940.
APPEAL FROM THE SUPREME COURT OF WISCONSIN.
*434 Messrs. William Lemke and Elmer McClain, with whom Mr. James J. McManamy was on the brief, for appellants.
Messrs. J. Arthur Moran and Arthur T. Thorson for appellees.
*435 MR. JUSTICE BLACK delivered the opinion of the Court.
Appellants are farmers. Two of appellees, as mortgagees, began foreclosure on appellants' farm[1] March 7, 1933, in the Walworth (Wisconsin) County Court; judgment of foreclosure was entered April 21, 1933; July 20, 1935, the sheriff sold the property under the judgment; September 16, 1935, while appellant Ernest Newton Kalb had duly pending[2] in the bankruptcy court a petition for *436 composition and extension of time to pay his debts under § 75 of the Bankruptcy Act (Frazier-Lemke Act),[3] the Walworth County Court granted the mortgagees' motion for confirmation of the sheriff's sale; no stay of the foreclosure or of the subsequent action to enforce it was ever sought or granted in the state or bankruptcy court; December 16, 1935, the mortgagees, who had purchased at the sheriff's sale, obtained a writ of assistance from the state court; and March 12, 1936, the sheriff executed the writ by ejecting appellants and their family from the mortgaged farm.
The questions in both No. 120 and No. 121 are whether the Wisconsin County Court had jurisdiction, while the petition under the Frazier-Lemke Act was pending in the bankruptcy court, to confirm the sheriff's sale and order appellants dispossessed, and, if it did not, whether its action in the absence of direct appeal is subject to collateral attack.
No. 120. After ejection from their farm, appellants brought an action in equity in the Circuit Court of Walworth County, Wisconsin, against the mortgagees who had purchased at the sheriff's sale, for restoration of possession, for cancellation of the sheriff's deed and for removal of the mortgagees from the farm. Demurrer was sustained for failure to state a cause of action and the complaint was dismissed. The Supreme Court of Wisconsin affirmed.[4]
No. 121 is a suit at law in the state court by appellant Ernest Newton Kalb against the mortgagees, the sheriff and the County Court judge who confirmed the foreclosure sale and issued the writ of assistance. Damages are sought for conspiracy to deprive appellant of possession, *437 for assault and battery, and for false imprisonment. As in No. 120, demurrer was sustained, and the Supreme Court of Wisconsin affirmed.[5]
In its first opinion the Supreme Court of Wisconsin said: "It is the contention of the plaintiff [mortgagor] that this statute is self executing,  that is, that it requires no application to the state or federal court in which foreclosure proceedings are pending for a stay; in other words, that it provides for a statutory and not for a judicial stay. Plaintiff's claims under the Bankruptcy Act present a question which clearly arises under the laws of the United States and therefore present a federal question upon which determination of the federal courts is controlling." Addressing itself solely to this federal question of construing the Frazier-Lemke Act, the Wisconsin court decided that the federal Act did not itself as an automatic statutory stay terminate the state court's jurisdiction when the farmer filed his petition in the bankruptcy court. Since there had been no judicial stay, it held that the confirmation of sale and writ of assistance were not in violation of the Act.
Appellees insist, however, that the Wisconsin court on rehearing rested its judgment on an adequate non-federal ground. If that were the fact, we would not, under accepted practice, reach the state court's construction of the federal statute.[6] The statement on rehearing relied *438 on as constituting the non-federal ground was: "We need not consider nor discuss the question whether the congress has power to divest the jurisdiction of a state court which has once attached. That question is not presented by this record. It would seem from a consideration of sec. 75 as amended that the filing of the petition automatically operated to extend the period of redemption. It is possible that that state of facts if made to appear would make the order of the trial court erroneous but the order would be within the power of the court to make. No appeal having been taken, no showing having been made in the state court, an order of sale having been confirmed and the purchaser put in possession, the plaintiff is in no position to claim that the order of the circuit court is void."
But if appellants are right in their contention that the federal Act of itself, from the moment the petition was filed and so long as it remained pending, operated, in the absence of the bankruptcy court's consent, to oust the jurisdiction of the state court so as to stay its power to proceed with foreclosure, to confirm a sale, and to issue an order ejecting appellants from their farm, the action of the Walworth County Court was not merely erroneous but was beyond its power, void, and subject to collateral attack. And the determination whether the Act did so operate is a construction of that Act and a federal question.
It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack.[7] But Congress, because its power over the subject of bankruptcy *439 is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally.[8] Although the Walworth County Court had general jurisdiction over foreclosures under the law of Wisconsin,[9] a peremptory prohibition by Congress in the exercise of its supreme power over bankruptcy that no state court have jurisdiction over a petitioning farmer-debtor or his property, would have rendered the confirmation of sale and its enforcement beyond the County Court's power and nullities subject to collateral attack.[10] The States cannot, in the exercise of control over local laws and practice, vest state courts with power to violate the supreme law of the land.[11] The Constitution grants Congress exclusive power to regulate bankruptcy and under this power Congress can limit the jurisdiction which courts, state or federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law. If Congress has vested in the bankruptcy courts exclusive jurisdiction over farmer-debtors and their property, and has by its Act withdrawn from all other courts all power under any circumstances to maintain and enforce foreclosure proceedings against them, its Act is the supreme law of the land which all courts  state and federal  must observe. The wisdom and desirability of an automatic statutory ouster of jurisdiction of all except bankruptcy courts over farmer-debtors and their property were considerations for Congress alone.
*440 We think the language and broad policy of the Frazier-Lemke Act conclusively demonstrate that Congress intended to, and did deprive the Wisconsin County Court of the power and jurisdiction to continue or maintain in any manner the foreclosure proceedings against appellants without the consent after hearing of the bankruptcy court in which the farmer's petition was then pending.[12]
The Act expressly provided:
"(n) The filing of a petition . . . shall immediately subject the farmer and all his property, wherever located, . . . to the exclusive jurisdiction of the court, including . . . the right or the equity of redemption where the period of redemption has not or had not expired, . . . or where the sale has not or had not been confirmed," and "In all cases where, at the time of filing the petition, the period of redemption has or had not expired, .. . or where the sale has not or had not been confirmed, . . . the period of redemption shall be extended or the confirmation of sale withheld for the period necessary for the purpose of carrying out the provisions of this section"; and
"(o) Except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner, the following proceedings shall not be instituted, or if instituted at any time prior to the filing of a petition under this section, shall not be maintained, in any court or otherwise, against the farmer or his property, at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court:

.....
*441 "(2) Proceedings for foreclosure of a mortgage on land, or for cancellation, rescission, or specific performance of an agreement for sale of land or for recovery of possession of land;

.....
"(6) Seizure, distress, sale, or other proceedings under an execution or under any lease, lien, chattel mortgage, conditional sale agreement, crop payment agreement, or mortgage.
"(p) The prohibitions . . . shall apply to all judicial or official proceedings in any court or under the direction of any official, and shall apply to all creditors, public or private, and to all of the debtor's property, wherever located. All such property shall be under the sole jurisdiction and control of the court in bankruptcy, and subject to the payment of the debtor farmer's creditors, as provided for in section 75 of this Act." [Italics supplied.]
Thus Congress repeatedly stated its unequivocal purpose to prohibit  in the absence of consent by the bankruptcy court in which a distressed farmer has a pending petition  a mortgagee or any court from instituting, or maintaining if already instituted, any proceeding against the farmer to sell under mortgage foreclosure, to confirm such a sale, or to dispossess under it.
This congressional purpose is more apparent in the light of the Frazier-Lemke Act's legislative history. Clarifying and altering the sweeping provisions for exclusive federal jurisdiction in the original Act,[13] Congress made several important changes in 1935.[14] It was then that subsection (p) was amended so that the prohibitions in subsection (o) of any steps against a farmer-debtor or his property once his petition is filed were made specifically applicable "to all judicial or official proceedings *442 in any court or under the direction of any official, and . . . to all creditors, public or private, and to all of the debtor's property, wherever located. All such property shall be under the sole jurisdiction and control of the court in bankruptcy, and subject to the payment of the debtor farmer's creditors, as provided for in section 75 . . ."
As stated by the Senate Judiciary Committee in reporting these amendments: ". . . subsection (n) brings all of the bankrupt's property, wherever located, under the absolute jurisdiction of the bankruptcy court, where it ought to be. Any farmer who takes advantage of this act ought to be willing to surrender all his property to the jurisdiction of the court, for the purpose of paying his debts, and for the sake of uniformity. . . .
"The amendment to subsection (p) further carries out the amendment to subsection (n), and places the sole jurisdiction of the bankrupt's estate and of his obligations all in the bankruptcy court, without exception."[15]
The Congressional purpose is similarly set out in the House Judiciary Committee's Report: "The amendment to subsection (n) in fact construes, interprets, and clarifies both subsections (n) and (o) of section 75. By reading subsections (n) and (o) as now amended in this bill, it becomes clear that it was the intention of Congress, when it passed section 75, that the farmer-debtor and all of his property should come under the jurisdiction of the court of bankruptcy, and that the benefits of the act should extend to the farmer, prior to confirmation of sale, during the period of redemption, and during a moratorium; and that no proceedings after the filing of the petition should be instituted, or if instituted prior to the filing of the petition, should not be maintained in any court, or otherwise."[16]
*443 Congress set up in the Act an exclusive and easily accessible statutory means for rehabilitating distressed farmers who, as victims of a general economic depression, were without means to engage in formal court litigation. To this end, a referee or Conciliation Commissioner was provided for every county in which fifteen prospective farmer-debtors requested an appointment; and express provision was made that these Commissioners should "upon request assist any farmer in preparing and filing a petition under this section and in all matters subsequent thereto arising under this section and farmers shall not be required to be represented by an attorney in any proceeding under this section."[17] In harmony with the general plan of giving the farmer an opportunity for rehabilitation, he was relieved  after filing a petition for composition and extension  of the necessity of litigation elsewhere and its consequent expense. This was accomplished by granting the bankruptcy court exclusive jurisdiction of the petitioning farmer and all his property with complete and self-executing statutory exclusion of all other courts.
The mortgagees who sought to enforce the mortgage after the petition was duly filed in the bankruptcy court, the Walworth County Court that attempted to grant the mortgagees relief, and the sheriff who enforced the court's judgment, were all acting in violation of the controlling Act of Congress. Because that state court had been deprived of all jurisdiction or power to proceed with the foreclosure, the confirmation of the sale, the execution of the sheriff's deed, the writ of assistance, and the ejection of appellants from their property  to the extent based upon the court's actions  were all without authority of law. Individual responsibility for such unlawful acts must be decided according to the law of the State. We therefore express no opinion as to other contentions based *444 upon state law and raised by appellees in support of the judgments of the Supreme Court of Wisconsin.
Congress manifested its intention that the issue of jurisdiction in the foreclosing court need not be contested or even raised by the distressed farmer-debtor. The protection of the farmers was left to the farmers themselves or to the Commissioners who might be laymen, and considerations as to whether the issue of jurisdiction was actually contested in the County Court,[18] or whether it could have been contested,[19] are not applicable where the plenary power of Congress over bankruptcy has been exercised as in this Act.
The judgments in both cases are reversed and the causes are remanded to the Supreme Court of Wisconsin for further proceedings not inconsistent with this opinion.
Reversed.
NOTES
[*] Together with No. 121, Kalb v. Luce et al., also on appeal from the Supreme Court of Wisconsin.
[1] In both No. 120 and No. 121, the complaints alleged that appellant Kalb and his wife executed the mortgage. In No. 120 both Kalb and his wife were alleged to be owners of the farm; while in No. 121, appellant Kalb was alleged to be the owner.
[2] October 2, 1934, the petition was filed and approved. June 27, 1935, the petition was dismissed, but September 6, 1935, it was reinstated and the order of dismissal was vacated pursuant to the second Frazier-Lemke Act, 11 U.S.C. 203, § 5.
[3] 11 U.S.C. 203.
[4] 231 Wis. 185; 285 N.W. 431.
[5] Demurrer to one count against the sheriff for assault and battery was overruled, but the Supreme Court of Wisconsin reversed as to this count. The opinion of the court upholding the demurrer appears in Kalb v. Luce, 228 Wis. 519; 279 N.W. 685; 280 N.W. 725. Appeal to this Court was dismissed because no final judgment had been entered. 305 U.S. 566. Upon remand the State Circuit Court dismissed, the Supreme Court of Wisconsin affirmed, "for the reasons . . . stated" in its opinion in Kalb v. Luce, supra, 231 Wis. 186; 285 N.W. 431, and the appeals here are from the judgments of dismissal.
[6] Honeyman v. Hanan, 300 U.S. 14, 18; Lynch v. New York ex rel. Pierson, 293 U.S. 52, 54; Enterprise Irrigation District v. Farmers Mutual Canal Co., 243 U.S. 157, 164; Hammond v. Johnston, 142 U.S. 73.
[7] Chicot County Drainage District v. Baxter State Bank, ante, p. 371; Stoll v. Gottlieb, 305 U.S. 165, 171, 172; Dowell v. Applegate, 152 U.S. 327, 340.
[8] Vallely v. Northern Fire Ins. Co., 254 U.S. 348, 353-4; and compare Elliott v. Lessee of Piersol, 1 Pet. 328, 340; Williamson v. Berry, 8 How. 495, 540, 541, 542.
[9] Laws of Wisconsin, 1907, Chap. 234.
[10] Vallely v. Northern Fire Ins. Co., supra, 355; cf. Taylor v. Sternberg, 293 U.S. 470, 473.
[11] Hines v. Lowrey, 305 U.S. 85, 90, 91; Davis v. Wechsler, 263 U.S. 22, 24.
[12] That a state court before which a proceeding is competently initiated may  by operation of supreme federal law  lose jurisdiction to proceed to a judgment unassailable on collateral attack is not a concept unknown to our federal system. See Moore v. Dempsey, 261 U.S. 86. Cf. Johnson v. Zerbst, 304 U.S. 458.
[13] 47 Stat. 1470, § 75.
[14] 49 Stat. 942, 943.
[15] Senate Report No. 985, 74th Cong., 1st Sess.
[16] House Report No. 1808, 74th Cong., 1st Sess.
[17] 47 Stat. 1473 (q).
[18] Stoll v. Gottlieb, supra.
[19] Chicot County Drainage District v. Baxter State Bank, supra.