## MARTINDALE MORTG. CO. v. CROW.

No. 4112.

Court of Civil Appeals of Texas. El Paso.
Sept. 18, 1941.

Rehearing Denied in Part Nov. 13, 1941.

Further Rehearing Denied Dec. 11, 1941.

Russell B. Wine and Truehart, McMillan & Russell, all of San Antonio, for appellant.

Keys & Holt, of Corpus Christi (Hayden W. Head, of Corpus Christi, of counsel), for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of one of the District Courts exercising jurisdiction in Bexar County, the Judge of the 92nd Judicial District presiding. The parties will be here designated as they were in the trial court.

Martindale Mortgage Company, as plaintiff, sued O. K. Crow, defendant, seeking recovery on two promissory notes, one in the sum of $2,700, the other in the sum of $3,000; the $2,700 note dated the 10th day of October, 1931, same being payable in installments, the last installment maturing on the 1st day of November, 1936, the note contained an acceleration of maturity clause to be exercised at the option of the holder of the note; the $3,000 note was dated the 12th day of January, 1932, payable in installments, the last installment maturing November 1, 1936. It likewise had an acceleration of maturity at the option of the holder in case of default. Each of these notes was in the nature of a renewal note. Plaintiff pleaded several matters relating to each note to show that same was not barred by limitation; among other things, a certain letter dated the 1st day of February, 1935, admissions filed in a bankruptcy petition filed by the defendant October 14, 1935, and that defendant had likewise admitted the validity of the notes in certain petitions filed in the District Court of San Patricio County; and likewise in a certain amended petition that defendant's attorneys sent to plaintiff's attorneys; that the $3,000 note had not been declared due until sometime in 1936, plaintiff having rescinded its action in declaring same due in 1934.

Defendant replied by general denial, pleas of want and failure of consideration, a plea of partial payment of the $2,700 note, and the four years' statute of limitations, Vernon's Ann.Civ.St. art. 5527.

At the close of plaintiff's evidence the court instructed a verdict in favor of defendant. From the judgment rendered on such instructed verdict the plaintiff has appealed.

There is in reality but one question involved in this appeal, and that is, was plaintiff's asserted cause of action as a matter of law, barred by the four years' statutes of limitations.

Each of these notes was secured by deed of trust on land in San Patricio County. Each of these deeds of trust was secondary to deeds of trust held by the John Hancock Mutual Life Insurance Company, which will hereinafter be designated as "Insurance Company."

Plaintiff's original petition was filed on the 14th day of February, 1939, and an amended petition on July 8, 1940, which was the trial petition. The original pe-

tition was a stereotyped action on the two notes above described.

This judgment is based on the instructed verdict, hence it will be necessary to discuss the evidence in some detail.

■ The $2,700 note, as has been stated, was dated the 10th day of October, 1931, originally secured by deed of trust on a tract of land of 390.63 acres in San Patricio County. It was secondary to a large indebtedness held by the Insurance Company. On May 8, 1934, there being default, appellant exercised its option and declared this note due, and caused the deed of trust to be executed through a substitute trustee, purchasing at the sale and crediting the note with $1,500. This note is clearly barred by the four years' statute, unless the scheduling of same by the defendant in a schedule accompanying his voluntary petition in bankruptcy under the Frazier-Lemke Act was such an acknowledgment of the debt from which a promise to pay might be inferred. This petition was filed by defendant in the United States District Court for the Southern District of Texas on the 14th day of October, 1935. This petition was dismissed by that court on the 3rd day of March, 1936 on the ground that no proposal for composition or extension of any character had been submitted by the debtor for the consideration of his creditors. It is claimed that the $2,700 note was included in a $14,700 indebtedness scheduled.

If the acknowledgment of the debt by scheduling same in bankruptcy was such acknowledgment from which a promise of payment is to be implied, this note was not barred by limitation on February 14, 1939, the date of the filing of plaintiff's original petition.

■ The nature of a voluntary bankruptcy is surrender of the bankrupt's property to the creditors to the end that after the subjection of the property to the debts of the creditors he may be discharged from such debts. It is a proceeding to be relieved from personal responsibility for the payment of debt. 8 C.J.S., Bankruptcy, p. 416, § 6.

■ From an unconditional written acknowledgment of a debt a promise to pay same is inferred. However, if in connection therewith there is an indication of the intention not to pay, or to pay only upon condition, there is no room for the implication of promise.

We are of the opinion, taking into consideration the purpose and nature of a bankruptcy proceeding, from the mere scheduling of a liability a promise to pay same is not to be inferred.

We have carefully read and considered the case of Bowie v. Henderson, 6 Wheat. 514, 5 L.Ed. 319. The Supreme Court of the United States was there dealing with the law of the District of Columbia, a law which did not give the bankrupt a discharge from the debt. The relief conditionally offered was from imprisonment for the debt, but personal liability for the debt continued. An admission of a debt under these circumstances might well support an implied promise to pay same. After all, what Chief Justice Marshall said in that case was dictum. The basis of the ruling was, granted that the admission in the schedules constituted a new promise, this new promise was itself barred by limitation.

■ We hold that the unpaid balance of the $2,700 note was barred as a matter of law.

What has been said here applies as to the scheduling of the $3,000 note. As to that note we think, also, that there was a claim that same should have been liquidated by offsets had such offsets been properly applied. As to the $3,000 note, defendant throughout made this contention: He consistently claimed that he had an agreement with plaintiff whereby certain commissions, which exceeded $5,000 in amount, should by agreement operate as a credit on the note we are discussing. At all relevant times herein the plaintiff was the fiscal agent for the Insurance Company, servicing its loans, which seem to have been rather extensive. A short history of the $3,000 note will aid in an understanding of the issues relative thereto.

On February 24, 1923, George T. McGehee executed and delivered to the Texas Farm Mortgage Investment Company (the name of which was thereafter changed to Martindale Mortgage Company) a deed of trust on 918.63 acres of land to secure one note for $32,000, and one for $3,000, executed by him, payable to that concern. Defendant Crow acquired the property subject to these liens. The smaller note was secondary to the larger one. The larger note and the extensions thereof were at all relevant times held by the Insurance Company. On January 12, 1932, defendant executed the note in question re-

citing that it was an extension of the Mc-Gehee note and given in consideration and extension of such note, securing same by a deed of trust on said 918.63 acres. On January 4, 1932, plaintiff endorsed this note to Major Clarkson, trustee. On December 5, 1934, the trustee named in the deed of trust resigned and plaintiff thereupon appointed a substitute trustee who, on December 10, 1934, at the instance of plaintiff advertised the property for sale under the deed of trust. On December 28, 1934, defendant sought and obtained from the District Court of San Patricio County a restraining order forbidding the sale, sought an accounting of plaintiff here, alleging that he had overpaid the $3,000 note, in that plaintiff owed him for services an amount in excess of $5,000, and the agreement was that the indebtedness for services should be offset against this note from time to time as such indebtedness accrued.

As has been stated, on October 14, 1935, defendant filed a voluntary petition in bankruptcy under the Frazier-Lemke Act, 11 U.S.C.A. § 203. The note was scheduled therein as a liability, but the schedule showed that defendant claimed he was entitled to credit thereon in an amount in excess of the amount of the note. As stated, this petition was dismissed by the court on March 31, 1936.

On February 4, 1936, the substitute trustee resigned and plaintiff appointed in his place another trustee for the purpose of selling the land. On March 2, 1936, defendant here obtained another injunction restraining the sale. Again plaintiff took the position that plaintiff here owed him money in excess of the $3,000 note and the sale would be inequitable. On March 1, 1937, Major Clarkson transferred back the note to plaintiff here. On February 1, 1935, defendant wrote the following letter to plaintiff:

"February 1, 1935.
"Martindale Mortgage Company
  "San Antonio, Texas.
        "Attention: Mr. Leslie.
"Gentlemen:
  "I was in Houston a few days ago to see the Federal Land Bank about my application for loan on the McGehee and one of the Committeemen advised me that according to the information they had there had been practically no reduction made on the purchase price, but that if I would get an itemized statement showing all credits or payments made since Nov. 1st, 1930 and bring it to Houston they would go into the matter further and see if they could approve the loan for enough to take care of the indebtedness.

"So I am asking that you please send me an itemized statement from Nov. 1, 1930, down to date just as soon as you can.

"Thanking you for this and past favors, I am,
        "Yours very truly,
            "(Signed)  O. K. Crow."

On February 2, 1935, plaintiff wrote defendant informing him that his aggregate payments had been in the sum of $6,539.26. The aggregate due on principal was some $47,120. In arriving at the principal due the $3,000 note was included. The total amount shown to be due by plaintiff's letter to defendant was some $55,000. The major portion of this, of course, was the claim of the Insurance Company against the 918.6-acre tract of land.

In regard to the petition in the two suits and the unfiled copy of the amended petition sent by counsel for defendant here to plaintiff's attorneys, we believe what we have said as to the schedules in bankruptcy applies here. These petitions were not unqualified admissions of the justness of plaintiff's claim. In fact, the claim was assailed—its justness disputed. In fact, in substance and effect defendant, as plaintiff in the San Patricio County suits against plaintiff here, claimed that he had paid this $3,000 note, obtained an injunction restraining plaintiff here from enforcing its security therefor. These suits were not a recognition of the legal duty to pay, but a bold and public assertion that nothing was due.

In our opinion neither the two filed petitions nor the unfiled petition can by any stretch of reason be construed into an admission of the justness of the $3,000 note.

It is asserted that the plaintiff rescinded its action in maturing this note. In December, 1934, it caused a substitute trustee to be appointed and the property to be advertised for sale, which sale would have no doubt taken place had it not been prevented by the injunction obtained by defendant. Again in 1936 it sought to have the property sold and was again prevented by injunction. There is no evidence that it ever offered the defendant an opportunity to pay up the delinquent installments; there is no evidence that de-

fendant ever sought such a privilege. We think that the evidence utterly fails to show a waiver and abandonment of the maturity of this installment note by plaintiff in December, 1934. Its answer in the San Patricio County suit was a general denial. Presumably it intended to proceed with the enforcement of its security unless enjoined.

We come now to the letter of February 1, 1935. If this letter constitutes a clear, definite and unequivocal acknowledgment of the debt in question from which a promise to pay is implied, same is barred by the four years' statutes of limitation, provided same was in operation from the date of the letter to the date plaintiff filed its suit. The letter is dated February 1, 1935. The original petition was filed February 14, 1939.

Plaintiff's position is that the statute of limitation was not in operation from and after the date of the filing of the petition until its dismissal.

Section 75 of the Bankruptcy Act, being 11 U.S.C.A., Sec. 203, in subdivision o, provides in part as follows: "Except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner, the following proceedings shall not be instituted * * * in any court or otherwise, against the farmer * * * at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court: (1) Proceedings for any demand, debt, or account, including any money demand," etc.

Perhaps any proceeding that plaintiff might have instituted for the collection of its debt in a State court during the pendency of this petition would have been void. Kalb v. Feuerstein, 308 U.S. 433, 60 S. Ct. 343, 84 L.Ed. 370; Trego v. Wright, 6 Cir., 111 F.2d 990; Wasson v. Collings, Tex.Civ.App., 145 S.W.2d 915.

There is no provision, so far as we know, in the State statutes providing for the suspension of the statutes of limitation during the pendency of a bankruptcy petition under the Frazier-Lemke Act. At the time of the pendency of the bankruptcy proceeding we have under consideration, we have been cited to no statutes of the United States providing for such suspension. It is true that Sec. 11 of the Bankruptcy Act known as 11 U.S.C.A. § 29, specifically provides for the situation we have here. Subsection f provides in part as follows: "The operation of any statute of limitations of the United States or of any State, affecting the debts of a bankrupt provable under this title, shall be suspended during the period from the date of the filing of the petition in bankruptcy * * *; or (3) until thirty days after the dismissal of the bankruptcy proceedings, which ever may first occur." Before the above quoted clause of the Federal Statutes went into effect the bankruptcy proceeding in question had been dismissed.

■ It is true, as contended by the defendant here, that the enjoining of the enforcement of a security of a debt does not prevent an action to recover the debt.

On the other hand, plaintiff's hands were absolutely tied by the bankruptcy petition as to enforcing personal liability for this debt. The effect of his filing the petition in question was to prevent plaintiff from recovering a judgment for its alleged debt. The action taken was, in our opinion, as effective as an injunction.

In our opinion limitation did not run against the claim during the pendency of the bankruptcy proceeding. Wofford v. Unger, 53 Tex. 634; Manes v. J. I. Case Threshing Mach. Co., Tex.Civ.App., 295 S.W. 281; Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370; Wasson v. Collings, Tex.Civ.App., 145 S.W.2d 915; Pioneer Bldg. & Loan Ass'n v. Johnston, Tex.Civ.App., 117 S.W.2d 556; Meridian Fertilizer Factory v. Collier, 193 La. 815, 192 So. 358.

We recognize that no injunction was in force against plaintiff, but there was a positive, legal prohibition brought about by the voluntary acts of the defendant. An accrued cause of action is of no avail unless a court is open to the holder for the vindication thereof.

■ Let us now return to the letter of February 1, 1935, which has been heretofore copied herein. The interpretation thereof was for the court. In case an issue was raised by the evidence as to what obligation it applied, that question might have been for the jury. Cotulla v. Urbahn, 104 Tex. 208, 126 S.W. 1108, 135 S.W. 1159, 34 L.R.A.,N.S., 345, Ann.Cas.1914B, 217.

The trial court in the interpretation of the instrument was under the duty of taking into consideration all the surrounding

facts and circumstances appearing in evidence. Clearly the letter referred to an obligation or obligations owed to the Insurance Company. All the original obligations seem to have stood in the name of plaintiff. The plaintiff so construed it. There was an unquestioned debt due the Insurance Company. Plaintiff was the agent of the Insurance Company and clearly, under the evidence, many negotiations or communications had taken place between plaintiff and defendant with reference to this obligation or obligations. The $3,000 note was an indebtedness claimed by plaintiff to be secured by the McGehee lands. However, at the time the letter was written defendant here had secured an injunction against the plaintiff on the theory that same was not a valid debt against the McGehee lands. The injunction was in force at the time the letter was written, having been issued a little more than one month before the date of the letter. In seeking to determine what this letter means the question of the legal basis for defendant's claims as to the note is of little importance. The question for determination is: Was there such an admission of the validity of the $3,000 note as would warrant the implication that defendant promised to pay same? Coles v. Kelsey, 2 Tex. 541, 542, 47 Am.Dec. 661; Mitchell v. Clay, 8 Tex. 443, 445; Cotulla v. Urbahn, 104 Tex. 208, 126 S.W. 1108, 135 S.W. 1159, 34 L.R.A., N.S., 345, Ann.Cas.1914B, 217.

The cause of action asserted by plaintiff was this letter. Cain v. Bonner, 108 Tex. 399, 194 S.W. 1098, 3 A.L.R. 874.

■ Under Article 5539 there must be a written acknowledgment of the debt to avoid the bar of the statute. Of the essence of this requirement is that the writing refer to the obligation in suit. There must be an acknowledgment of the debt in suit—acknowledgment of a debt is not sufficient under the circumstances. The situation is simple where there is only one debt existing between the parties. In such a case the acknowledgment is presumed to refer to that debt.

But here we have more than one debt. For, as it has been said, unquestionably the indebtedness to the Insurance Company was taken into consideration.

In our opinion in the last analysis the letter is simply a request for a statement of the indebtedness with all payments and credits. From this the construction does not necessarily follow that defendant was abandoning his previous position in substance that the $3,000 note had been overpaid. In fact, we think such is not the true construction of the letter. It simply amounted to a request for plaintiff to make a definite statement of all claims that a loan might be sought from the Federal Land Bank. Defendant conceded an indebtedness against the McGehee lands. The letter does not concede that he was to be bound by the statement of plaintiff as to the credits and payments. In no way was it to be tortured into a construction, "I owe you $3,000." In order to avoid the bar of the statute this in substance must be the construction.

■ The written acknowledgment must be clear, definite and unequivocal. McDonald v. Grey, 29 Tex. 80; Krueger v. Krueger, 76 Tex. 178, 12 S.W. 1004, 7 L.R.A. 72; Henry v. Roe and Burnside, 83 Tex. 446, 18 S.W. 806; York v. Hughes, Tex.Com.App., 286 S.W. 165.

■ The request implied the indebtedness was subject to credits and that payments had been made. While it is not essential that in all cases the acknowledgment of the debt specify the exact amount due, such amount must be susceptible of ready ascertainment; further, it must be an acknowledgment of a present debt.

In our opinion, as a matter of law, the letter was not such a clear, definite and unequivocal acknowledgment of the claim in suit as is necessary to the implication of promise to pay same.

The trial court properly instructed a verdict in favor of the defendant.

The case is affirmed.

### On Rehearing.

■ We have given careful consideration to the able and forceful motion of appellant for rehearing. However, we are still of the opinion that the letter was insufficient to constitute an admission of the justness of the $3,000 note from which a promise to pay should be inferred.

In the light of the motion for rehearing we have reviewed the entire case, save as to the $2,700 note. The motion seems to concede the correctness of the disposition with reference to same.

■ In the original opinion it was stated that the statute of limitation was sus-

872

pended during the pendency of the bank-, ruptcy proceedings. We still adhere to that view. Meridian Fertilizer Factory v. Collier, 193 La. 815, 192 So. 358.

In reference to the Federal Bankruptcy Act of 1867, 14 Stat. 517, the Supreme Court of Texas has held that a proceeding thereunder suspended the application of the State statute of limitations. This, where a claim had been filed. On the ground, we presume, that the Act forbade the institution of a suit on a claim filed in the bankruptcy court. Wofford v. Unger, 53 Tex. 634.

In the original opinion we quoted the provision of the Federal Act which we think applicable here. It is very explicit. During the period of the pendency of this bankruptcy, under the terms of the law, there was no court where, as a matter of right, the appellant might institute suit seeking to recover against appellee on this claim. No court, without appellant obtained the consent of the bankruptcy court, could entertain its suit.

The $3,000 note was declared due December 6, 1934. It, therefore, would be barred December 6, 1938, by the four years statute of limitation applicable, if such statute operated during the entire period. Appellant filed suit on the $3,000 note on February 14, 1939. If the statute ran during the entire time, same would have been barred for about two months before the filing of the suit. Appellee filed the bankruptcy proceeding October 14, 1935, and same was dismissed March 3, 1936.

As we have stated here and in the original opinion, the statute did not operate from October 14, 1935, to March 3, 1936. This being true, appellant was not barred on February 14, 1939, when the suit was filed.

We have no doubt that the filing of the petition interrupted the running of the statute. In substance, in the original petition and in the amendments thereto, we think appellee sought judgment for the same debt, the basis of the original petition.

See Vernon's Annotated Civil Statutes, Sec. 5539b.

We think we were in error in affirming the judgment of the trial court as to the $3,000 note. The motion as to the $3,000 note is granted. Our judgment of affirm-ance as to that portion of the judgment is set aside.

It is ordered that that part of the judgment be reversed and remanded; the judgment of affirmance as to the $2,700 note to remain in effect.