[File No. 6834.]

THE FEDERAL LAND BANK OF ST. PAUL, a Body Corporate, Respondent, v. MARTIN WOLD, Appellant.

(4 NW(2d) 844.)

Opinion filed July 2, 1942.   Rehearing denied August 14, 1942.

*M. W. Duffy* and *William Lemke,* for appellant.
*Pearce & Stephan* and *John F. Lord,* for respondent.

BURR, Ch. J.   In 1935 the defendant was the owner of the land involved.   He mortgaged the land to the plaintiff; the mortgage was foreclosed; and on May 2, 1940, sheriff's deeds were issued to the plaintiff.

In May, 1941, plaintiff commenced this action in the justice court to recover possession of the land, claiming the defendant was wrongfully and unlawfully withholding the land after a notice to quit the premises had been served upon him.

In his answer, the defendant admitted the land had been mortgaged to the plaintiff and the mortgage was foreclosed, but alleged "that on March 26, 1940, he filed his petition under the Frazier-Lemke bankruptcy act with Peter C. Tangen, a conciliation commissioner under said act.   That the filing of said petition was a bar to any further proceedings under said foreclosure and that the purported sheriff's deed issued to said plaintiff was and is void.   That said defendant was and is the owner of said lands and entitled to the possession thereof."

Because of the question of title attempted to be raised, the court certified the case to the district court.

The jury found for the plaintiff "for the immediate possession of the premises described in the Plaintiff's Complaint. For reasons of neglect on the part of conciliation commissioner Peter Tangen and attorney for defendant not fining (filing) papers in proper cort (court). We the jury vote in favor of Plaintiff."

This latter lengthy sentence was added by the jury to the form the court submitted.

A motion for a new trial was made, specifying two alleged errors in the instructions to the jury, and nothing further. The motion was denied, and defendant appealed from the judgment and from the order denying his motion for a new trial.

Upon this appeal, defendant specified four assignments of error. Two of these are the two specifications of error upon which he based his motion for a new trial. One is based upon the order of the court entering judgment in favor of the plaintiff, and the other on the denial of the motion for a new trial. In addition, it is alleged that the court made error in remarks during argument by plaintiff's counsel.

In the instructions complained of, it is charged the court erred in instructing the jury:

"1.—Instruction. 'There are really two questions of fact for you to determine here. First, did this defendant make out a petition and schedules, and by schedules is meant a list of his debts and the amount that he is owing to each one, and their names and addresses. Did he make this out and request that it be forwarded to the Federal Court at Fargo, to the Clerk of the Federal Court at Fargo, *and did the conciliation commissioner indorse on it as required by law, the date and the hour when he received it ?'*

"2.—Instruction. *'The next question is, was it ever filed with the Clerk of the United States Court?* We have in this state only one United States District Court, or Federal Court, and that covers the whole state of North Dakota. The office of the Clerk of that Court is at Fargo, where all papers should be filed. If these steps were taken such as the law requires to be taken, and done, then the Federal Court, or Bankruptcy Court, as it is sometimes called, would have exclusive

jurisdiction of this matter. This farm land and all the property the defendant owned would be under the control of the Bankruptcy Court, and no suit could be brought on any of these debts, no mortgages could be foreclosed, without the consent of the Federal Court, until the period of time had expired when he had carried out his new agreement with his creditors. . . . *However, in order for the Bankruptcy Court to acquire jurisdiction it is necessary that the petition be filed with the Court. The Court cannot acquire jurisdiction of any matter unless it has got a petition, and it must be filed; otherwise the Court does not know what it is, does not know what is involved. So if you find that the defendant in this case has not complied with the requirements of the law and the rules of the court with regard to filing his petition with the Clerk of the Federal Court at Fargo, then the Bankruptcy Court has not acquired any jurisdiction of this man's property, and the period of redemption has not been extended:*

" 'Now, then, I may say here that the burden of proof is upon the defendant in this case to show that he has complied with the law, with this Frazier-Lemke Law, with regard to filing his petition. If you find that he has complied with all the requirements then he would still be the owner of the land. *However, if you find that he has not complied with all the requirements of this law, then the plaintiff is the owner of this land, and is entitled to the immediate possession, and your verdict should be for the plaintiff.'* "

With reference to these instructions, appellant says: "As *it has at all times been conceded that the petition and schedules were not filed with the clerk of the Federal Court at Fargo,* this instruction was equivalent to directing a verdict for the plaintiff, and defendant's position is that it was in direct conflict with the amendment to subsection (n), adopted August 28, 1935."

The Federal statute involved is § 75 of the bankruptcy act as amended, 11 USCA § 203, 3 FCA title 11, § 203. This act provides that "every court of bankruptcy of which the jurisdiction or territory includes a county or counties having an agricultural population (according to the last available United States census) of five hundred or more farmers shall appoint one or more referees to be known as 'conciliation commis-

sioners,' one such conciliation commissioner to be appointed for each county having an agricultural population of five hundred or more farmers according to said census. . . . No individual shall be eligible to appointment as a conciliation commissioner unless he is eligible for appointment as a referee and in addition is a resident of the county. . . ."

The Federal statute provides that if a county does not have five hundred farmers residing therein, such county may be attached to another county and a conciliation commissioner be appointed for the territory. There is nothing to indicate that Griggs county does not have five hundred farmers resident therein, nor to show no conciliation commissioner was appointed for Griggs county, nor to show Griggs county was attached to Nelson county. The record is silent as to any jurisdiction Tangen may have had as a conciliation commissioner in Griggs county.

Subdivision (c) of the section provides that a petition may be filed by any farmer stating he is insolvent; this petition "shall be accompanied by his schedules;" the petition "shall be filed with the court, but shall, on request of the farmer . . . be received *by the conciliation commissioner for the county in which the farmer resides* and promptly transmitted by him to the clerk of the court for filing."

Subdivision (e) of § 75 requires such conciliation commissioner to call the meeting of creditors promptly, "stating in the notice that the farmer proposes to offer terms of composition or extension, and inclosing with the notice a summary of the inventory, a brief statement of the farmer's indebtedness as shown by the schedules, and a list of the names and addresses of the secured creditors and unsecured creditors, with the amounts owing to each as shown by the schedules," and further provides the commissioner "shall, after hearing the parties in interest, fix a reasonable time within which application for confirmation shall be made, . . . After the filing of the petition and prior to the confirmation or other disposition of the composition . . . the court shall exercise such control over the property of the farmer as the court deems in the best interests of the farmer and his creditors."

Subdivision (g) provides that "An application for the confirmation of a composition or extension proposal may be filed in the court of bankruptcy after, but not before, it has been accepted in writing, by a major-

ity in number of all creditors whose claims have been allowed, . . ."

Subdivision (n) provides, "The filing of a petition . . . with the clerk of court, *or leaving it with the conciliation commissioner for the purpose of forwarding same to the clerk of court,* praying for relief under § 75 of this Act, as amended, *shall immediately subject the farmer and all his property* . . . *to the exclusive jurisdiction of the court.* . . ."

Subdivision (q) provides: "A conciliation commissioner shall upon request assist any farmer in preparing and filing a petition under this section. . . ."

Paragraph (2) of subdivision (s) provides: "When the conditions set forth in this section have been complied with, the court shall stay all judicial or official proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years."

The sole defense is that prior to the expiration of the time for redemption, the defendant took the necessary steps in bankruptcy required by the Frazier-Lemke Act, and, therefore, jurisdiction over the property was thereby vested in the district court of the United States; and, consequently, the issuing of the sheriff's deeds did not divest the Federal court of its jurisdiction.

Exhibit D is the certificate of the clerk of the United States District Court for the district of North Dakota, showing "no proceedings under said § 75 of the Bankruptcy Act have been instituted by the following named person, to-wit: 'Martin Wold, of Griggs County, North Dakota.'"

At all times mentioned the defendant was a resident of Griggs county, and the land is situated in that county. Peter Tangen of Aneta, a resident of Nelson county, was a conciliation commissioner for Nelson county. It is the claim of the defendant that though the Federal Statute makes provision for the appointment of a conciliation commissioner in each county of the State, and the Federal court has not seen fit to make such an appointment for Griggs county, yet the "Court is in the habit of sending these cases from one county to another. In some cases there are no commissioners in the county in which certain lands are located, and the case is sent to the commissioner in another county."

There is nothing in the record to support such a claim, or that the court gave Peter Tangen power to act on matters from Griggs county.

The record shows that on or about March 26, 1940, the defendant went to the office of Peter Tangen in Aneta, and there he signed "all kinds of papers . . . and it went A, B, C, and so on, a number of them; and when I was done signing—it took a long time signing a bunch of them,—I says, I asked if these are correct and right now, and he says . . . 'Could I do wrong? I am under $2,000 bonds.'" (Quoting defendant.) At that time the defendant paid Mr. Tanger $15.00 (Ex. 1), testifying, "Well, he wanted $15 he said for his trouble;" and later, when asked if that was for making out and filing, he said, "So far as I knew that was for the papers there. . . . Them papers I should sign, all them papers I should sign." Again, he stated that he signed them "to take the Frazier-Lemke Moratorium."

This is the only testimony of the defendant bearing directly upon any attempt he made to take advantage of the provisions of the Frazier-Lemke Act. He tells us nothing about the nature of these papers that were signed (nor ever calls any of them a petition), except he says that while the papers were being made out, Mr. Tangen asked him how much he owed, how many horses and cows and chickens he had, etc.

Defendant testified Tangen told him there would be a hearing on June 10, and that Mr. Tangen had sent him a notice to come to the hearing. On June 8, 1940, Mr. Tangen wrote to defendant (Ex. 2), stating, "The Federal Land Bank has not filed any claim yet so it will not be necessary for you to be here on the 10th. I shall let you know when when I hear from them and we can then meet at some leter (later) date."

On September 6, 1940, Mr. Tangen wrote to the plaintiff with reference to certain grain storage tickets for wheat, and in his letter (Ex. 4), stated, "Mr. Wold is trying to redeem his farm and has filed under the so-called Frazier-Lemke Act."

The defendant never had possession of any of these papers signed by him. Tangen was not a witness, but defendant introduced in evidence, without objection, and read to the jury, Ex. 6-A, an affidavit by Tangen, dated July 30, 1941, as follows:

"Peter C. Tangen, being first duly sworn deposes and says that he is

an attorney at law and former U. S. Conciliation Commissioner for Nelson County, North Dakota, with offices at Aneta, North Dakota. That he is well acquainted with the above named defendant Martin Wold who resides in Griggs County, North Dakota. That said Martin Wold on or about the 26th day of March, 1940, consulted him as an attorney about taking advantage of the Frazier-Lemke Bankruptcy Act, and informed him that the above named plaintiff, The Federal Land Bank of St. Paul, had foreclosed its mortgage on his land and that the period of redemption would shortly expire. That affiant explained to said Martin Wold the necessity of filing a petition along with schedules of all his assets and liabilities, and the said Martin Wold gave him what information he had, which affiant took down. That the said Martin Wold did not have full and complete information as to all his assets and had no definite information as to the amount of taxes he owed and he agreed to secure this information for affiant.

"That affiant advised the said Martin Wold as an attorney, as he did in several instances where parties resided outside of Nelson County, and Mr. Wold on said day, namely about the 26th day of March, 1940, gave affiant a check for $15.00 to apply on his attorney's fee, no part of which was for a filing fee. That affiant never acted as a Conciliation Commissioner in said matter, and no petition or schedules were ever made out in said Martin Wold matter, either by him as an attorney or as Conciliation Commissioner. None was ever executed by said Martin Wold and no petition or schedules were ever filed in affiant's office as Conciliation Commissioner.

"That a later investigation by affiant revealed that said Martin Wold did not farm his own land, but rented the same out to another, and affiant being convinced that any petition filed in the Federal Court by Wold would be thrown out, nothing more was done by him in the matter.

"Affiant states positively that the defendant Martin Wold never filed any petition or schedules under the Frazier-Lemke Bankruptcy Act in his office as Conciliation Commissioner and any statement to the contrary is contrary to fact and false."

Giving the testimony the most liberal interpretation in favor of the defendant, it would appear that some five weeks prior to the issuance of

the sheriff's deeds, the defendant had gone to the office of Mr. Tangen for the purpose of discussing proceedings under the Frazier-Lemke Act, and had signed some papers which Mr. Tangen drew. The defendant paid him $15. An attempt is made to show that this was for the filing fee, but the testimony does not bear that out. The best we can say with reference to this feature is that Mr. Wold paid him for his services and for "all them papers I should sign," as he puts it. Clearly, nothing further was done by the defendant or anyone on his behalf.

The issue before us then is to determine whether the record shows sufficient proceedings to confer upon the United States District Court exclusive jurisdiction over this property.

As the United States Supreme Court rules—Kalb v. Luce, 308 US 433, 84 L ed 370, 60 S Ct 343, 41 Am Bankr Rep (NS) 501, "The provisions of § 75 (n) (o) (p) of the Bankruptcy Act (11 USCA § 203 (n) (o) (p), 3 FCA title 11, § 203 (n) (o) (p), that the filing of a petition shall immediately subject the farmer and all his property to 'the exclusive jurisdiction' of the bankruptcy court, that proceedings for foreclosure or for recovery of possession 'shall not' be instituted or maintained 'in any court or otherwise' against the farmer or his property 'at any time after the filing of the petition,' and that such prohibitions shall apply to 'all judicial or official proceedings in any court,' operate as an automatic stay of foreclosure proceedings in state courts; and court orders confirming a foreclosure sale and dispossessing the mortgagors while proceedings are pending under § 75 are void as without authority of law, even though no judicial stay of such action was ever sought or granted in either the state or bankruptcy courts."

Consequently, if a petition had been filed, there is no question that the sole jurisdiction would be with the Federal court.

Defendant urges that jurisdiction of the Federal court attached because of this amendment to subdivision (n) of the section, adopted August 28, 1935, "The filing of a petition or answer with the clerk of court, *or leaving it with the conciliation commissioner for the purpose of forwarding same to the clerk of court, praying for relief under* § 75 *of this Act, as amended,* shall immediately subject the farmer and

all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court. . . ."

This means "leaving it with the conciliation commissioner" for Griggs county, for this was the county of defendant's residence, and we must give effect to subdivision (c) already quoted.

There is an utter failure of evidence in this case to show that any petition was ever made out. Some papers were signed. The defendant does not know what they were, and he himself introduced Exhibit 6-A.

In offering Exhibit 6-A, the counsel for defendant stated to the court that it was offered by the defendant "for the sole purpose to show that Mr. Tangen, Conciliation Commissioner, claims that no Frazier-Lemke petition had ever been submitted." The counsel then read the entire exhibit to the jury during the time testimony was being taken.

It is true that the counsel for defendant stated to the court, during the arguments, that this Exhibit 6-A had been introduced "for the only purpose of showing he (Tangen) denies it (the petition) was filed, and not for the purpose of using it as evidence,—that it was not filed." Just why defendant wanted to do this is not clear. Defendant was the only one who claimed he filed a petition with Tangen. The only effect could be to raise a question of veracity between himself and one not even a witness in the case or party to the action.

The defendant did not offer a portion of the exhibit, that is, certain lines or sentences or phrases. He offered all of it to show that Mr. Tangen claimed no petition had ever been filed. The exhibit, therefore, was in the record for all relevant purposes. It was a statement made by Mr. Tangen under oath, an affidavit. "As a general rule, when a document is offered in evidence, it must be taken in its entirety; the parts operating against the interests of the party offering it, as well as the parts in his favor." Union Iron Works Co. v. Union Naval Stores Co. 157 Ala 645, 651, 47 So 652, 653.

Defendant sought to limit its effect to what he alleged was the claim made by Tangen. The whole document deals with the question of what took place in his office when the defendant came to see him there in Aneta. Not only does it set forth that no petition was ever filed with him, but attempts to show what was the nature of the papers that were made out. Where a document is introduced in its entirety, and the

party introducing it refers to but a portion thereof, his adversary may require that all of the document that bears upon, modifies, or explains the part that was admitted in behalf of his opponent, be read, so far as these remaining parts are relevant to the issue; and all was read. See 20 Am Jur 770, Evidence; 22 CJ 972.

It is true the jury wrote an addendum to the verdict, but no question was submitted to the jury for special finding, and this action was voluntary. However, the defendant construes this addition as a finding by the jury that the proper papers had been prepared and left with Mr. Tangen as the conciliation commissioner to be by him forwarded to the clerk of court under the provisions of the amendment to subsection (n) of § 75 of the Act, adopted August 28, 1935. We cannot so consider it. There is no specification of error to the effect the verdict is contrary to the evidence, nor any new trial demanded on that score. Defendant seems to consider that because this sentence was written into the verdict, the court should have ignored the verdict which read that the jury found for the plaintiff, and have entered judgment for defendant. But defendant never asked that judgment should be entered for him because of this verdict with the addendum.

There is no question but what some papers of some nature were drafted in Mr. Tangen's office at a time when the defendant was consulting Tangen with reference to taking advantage of the Frazier-Lemke Act. Exhibit 6-A shows this, and the testimony of Mr. Wold indicates the same. Mr. Wold does not say what the papers were. There is nothing but tenuous inference to show that any attempt was made to prepare a petition or schedules, if we eliminate consideration of Exhibit 6-A; and if we consider Exhibit 6-A, then the record shows positively no petition or schedules were prepared. If we consider the statements made in Exhibit 6-A, the papers were mere memoranda, and not a petition or schedules. If we do not consider Exhibit 6-A, and use it solely for the purpose of showing that no papers were ever filed with the clerk, a matter which was not in dispute, then there is no testimony showing what these papers were.

There was no proof a petition had ever been prepared, nor of any compliance with the provision found in the amendment to subdivision (n), adopted August 28, 1935. Jurisdiction of the Federal court never at-

tached, and, therefore, the state courts were not deprived of jurisdiction to determine the issues involved.

There is no attack upon the deeds. They were properly executed and delivered. If the jurisdiction of the Federal court did not attach, they divested the defendant of all title to the land. This being so, the plaintiff was entitled to possession, and so the judgment of the lower court is affirmed.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.