**In the Matter of Willie E. KING, Debtor.**

**Bankruptcy No. 82–03127A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Nov. 22, 1983.

Paul C. Parker, Decatur, Ga., for debtor.

Robert W. Scholz, Trauner, King & Cohen, Atlanta, Ga., for respondents.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

Currently before the Court is a motion by the debtor to set aside the conveyance of certain real property as a result of a foreclosure sale under a power of sale by Diversified Mortgage and Realty Company ("Diversified"). Ordinarily, any action taken in derogation of the automatic stay, 11 U.S.C. § 362 of the Code, is avoidable and may even justify an order for contempt. When all the requirements exist which trigger the applicability of § 549(c), however,

the debtor's automatic stay protection is limited.[1] For the reasons set forth below, this Court holds that the circumstances required to satisfy § 549(c) existed at the time of sale, and therefore, the debtor may not set aside the conveyance which resulted from the foreclosure sale.

### Findings of Fact

The following facts have not been disputed by the parties:

1. On June 3, 1975, Alice Adams executed a Deed to Secure Debt on real property located at 1325 McPherson Avenue, DeKalb County, Georgia, in favor of Diversified Mortgage and Realty Company ("Diversified").

2. The Deed to Secure Debt granted to Diversified a specific power of attorney such that in the event of default, Diversified was permitted to offer the property for public sale under a power of sale.

3. At her death, Alice Adams left the property located at 1325 McPherson to her relatives, Shirley Ann King and Willie E. King, naming Shirley Ann King as Executrix under the will.

4. A default according to the terms of the Deed to Secure Debt occurred.

5. Notification of this default was made to the Kings pursuant to the terms of the Deed to Secure Debt, and notice of sale under power was given in accordance with the Georgia Code.

6. On July 6, 1982, at approximately 8:30 a.m., a conveyance was recorded in DeKalb County, showing that Shirley Ann King, as Executrix, had conveyed the property at 1325 McPherson to Shirley Ann King and Willie E. King.

7. Approximately one half hour later, at 9:00 a.m., Willie E. King filed a Chapter 13 petition at the United States Bankruptcy

1. This Court rejects the debtor's interpretation of the inapplicability of § 549(c) to a Chapter 13 case. Section 103(a) makes § 549(c) applicable not only to Chapter 7 as the debtor argues, but Chapters 11 and 13 as well, unless the operative chapter has a provision which contradicts or is inconsistent with the provision of general application, in which event the operative chapter provision prevails. This Court finds no inherent contradiction in the application of § 549(c) to the instant circumstances. *Accord, In re McGowan,* 19 B.R. 952 (Bkrtcy.E.D.Pa., 1982); *In re Bernard,* 21 B.R. 287 (Bkrtcy.E.D.Pa., 1982).

Court for the Northern District of Georgia, Fulton County, Georgia.

8. At approximately 10:00 a.m., still on July 6, 1982, Diversified, under its power of sale, conducted a foreclosure sale of the property at 1325 McPherson, on the courthouse steps of DeKalb County.

9. At that sale, Robert Troy and ·Julius Iteld ("Troy and Iteld"), without notice of Willie King's Chapter 13 filing, bid and bought the property for $12,601.00, the highest bid.

10. On July 16, 1982, the deed to Troy and Iteld was recorded in DeKalb County.

11. The debtor did not file a copy of his Chapter 13 bankruptcy petition in DeKalb County.

12. Sometime after debtor filed his Chapter 13 petition and after Diversified's foreclosure sale, debtor sold the property located at 1325 McPherson to Alvin and Marilyn Simmons for $13,000.00.

13. A check in the amount of $13,000.00 was sent to the closing attorney for Diversified on behalf of the debtor.

14. This check was returned with an explanation that the property had previously been sold at the foreclosure sale on July 6, 1982.

15. No deed was recorded in the name of Simmons prior to the July 16, 1982 deed recorded in the name of Troy and Iteld.

16. On July 26, 1982, the debtor's Chapter 13 petition was dismissed for failure to file the necessary schedules and statements.

17. Debtor has requested that the Court vacate its order to dismiss his Chapter 13 case and also set aside the conveyance to Troy and Iteld which resulted from the foreclosure sale.

18. At a hearing on October 15, 1982, this Court denied the motion to vacate, but requested that the parties brief the issue of whether the conveyance recorded as a result of the foreclosure sale should be set aside.

19. The parties have submitted the requested briefs.

## DISCUSSION

The debtor contends that pursuant to § 362 of the Bankruptcy Code the conveyance which resulted from Diversified's foreclosure sale should be set aside. The protections accorded to a debtor filing a bankruptcy petition under the Bankruptcy Code are indeed extensive.[2] Actions taken by a party in violation of the automatic stay will be voided. *In re Pickus,* 8 B.R. 114, 119 (Bkrtcy.Conn., 1980), citing to *Kalb v. Feuerstein,* 308 U.S. 433, 438, 60 S.Ct. 343, 345, 84 L.Ed. 370 (1940). The courts generally recognize that a party who takes an action in violation of the stay, but without knowledge of the bankruptcy filing and

**2.** § 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the *enforcement* against the debtor or against property of the estate, of a judgment obtained *before the commencement of the* case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect assess, or recover a claim against the debtor that arose before the *commencement of the case under this title;*

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

See also the Legislative History accompanying § 362. S.Rep. No. 989—95th Cong. 2nd Sess. 54–55 (1978) *reprinted in* U.S.Code Cong. & Admin.News, pp. 5787, 5840–5841.

consequent stay, ought not to suffer a citation for contempt. *Id.* The courts will enforce, however, both a contempt citation and assessment of costs against a party who commits a knowing violation of the protective measures of § 362(a). *In re Van Riper,* 25 B.R. 972, 978 (Bkrtcy.W.D.Wis., 1982). The Code itself, however, does impose some limitations on the protections afforded the debtor. Subsection (b) of § 362 enumerates certain specific exceptions to the operation of the stay. Section 549(c) provides other instances which limit the debtor's protection. In the instant case, it is § 549(c) which controls the rights of the parties and requires this Court to hold that the debtor may not set aside the conveyance which resulted from the foreclosure sale.

Section 549 deals with the avoidance of certain post-petition transactions. Pursuant to § 549(c), a transfer may not be avoided if the following criteria are met:

(1) There was a transfer of real estate to a good faith purchaser who was without knowledge of the commencement of the case;

(2) The purchase was made for fair, equivalent value;

(3) No copy of the debtor's bankruptcy petition was filed in the office where conveyances of real property are to be recorded.

The circumstances of the instant case fulfill these criteria.

■ The debtor filed his Chapter 13 bankruptcy petition in the morning of July 6, 1982. At the time he filed, pursuant to § 541(a),[3] the property located at 1325 McPherson was property of the estate. Such is the situation because under Georgia law while a Deed to Secure Debt passes legal title, it does not divest the grantor of all his rights and interests in the property. *Barnard v. Barnard,* 91 Ga.App. 502, 86 S.E.2d 533 (1955) (citations omitted). Thus, the equitable interest which had formerly belonged to Alice Adams as grantor, by

virtue of executing the Deed to Secure Debt to Diversified, had passed to the debtor and consequently belonged to his estate at filing.

■ Even though the property in question belonged to the debtor's estate at filing, § 362(a) does not void the foreclosure sale which occurred about an hour after the debtor's Chapter 13 filing. The sale of the real property by Diversified, under the terms of the Deed to Secure Debt, was made to good faith purchasers, Troy and Iteld, who were without knowledge of the commencement of the Title 11 U.S.C. case. The purchase price paid at Diversified's foreclosure sale by the good faith purchasers was $12,601.00. This amount may be compared to the $13,000.00 that the debtor received in his subsequent sale of the property. The difference of $399.00, a difference of 3 percent, is so sufficiently small that this Court finds that the buyers at the foreclosure sale paid a fair, equivalent value for the property. The last requirement for setting aside a sale of real property under § 549(c), that the debtor file a copy of his bankruptcy petition in the office where real property conveyances are to be recorded did not occur. The real property in the instant case was located in DeKalb County. Transactions regarding real property located in DeKalb County are to be recorded in DeKalb County. The debtor filed his Chapter 13 petition with the Bankruptcy Court in Fulton County. No copy of the Chapter 13 petition prior to consummation of the foreclosure sale on July 16, 1982, when the transfer of consideration between Diversified and Troy and Iteld actually occurred, was filed in DeKalb County. *See In re Smith,* 19 B.R. 592, 594 (Bkrtcy.N.D.Ga., 1982) (under Georgia law a foreclosure sale is not final until a deed is transferred and consideration has passed) (citations omitted).

For the reasons set forth above, this Court holds that the actual circumstances in

---

**3.** § 541. Property of the estate

(a) The commencement of a case . . . creates an estate . . . comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

the instant Title 11 case triggered the operation of § 549(c) and § 362(a) is rendered inapplicable. The legal consequence which follows prevents this Court from setting aside the conveyance which resulted from Diversified's foreclosure sale.