CHICAGO, MILWAUKEE, ST. PAUL
AND PACIFIC RAILROAD
COMPANY, Petitioner,

v.

UNITED STATES of America and
Interstate Commerce Commission,
Respondents.

No. 77–1453.

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1978.

Decided Oct. 4, 1978.

Jospeh A. Auerbach, Boston, Mass., for petitioner.

John J. McCarthy, Jr., I. C. C., Washington, D. C., for respondents.

Before PELL and WOOD, Circuit Judges, and FLAUM, District Judge.*

PELL, Circuit Judge.

The Chicago, Milwaukee, St. Paul and Pacific Railroad Company (Milwaukee) petitions for review of an order of the Interstate Commerce Commission (ICC) which dismissed the Milwaukee's application for inclusion in the Burlington Northern, Inc. (BN) and its alternative petition for additional traffic protective conditions from the BN. The primary contentions of the Milwaukee in this case are that the ICC, in denying the application, failed to give the Milwaukee adequate notice that it was considering the merits, and failed to make findings required by the Interstate Commerce Act, 49 U.S.C. § 1·et seq. (Act). Whether such findings were required turns on the proper construction of 49 U.S.C. § 5(2) and more importantly on the correct interpretation of Condition 33 which the ICC imposed on the BN merger.

I.

An understanding of these issues requires some background regarding the BN merger. In 1967 the ICC approved a merger plan filed by the Northern Pacific Railway Company and the Great Northern Railway Company and three of their subsidiaries.[1] The merger was affirmed by the district court[2] and by the Supreme Court.[3] The ICC had rejected several previous merger attempts primarily because of concern that the merger would significantly diminish competition. It finally approved the merger after becoming satisfied that the benefits of the merger outweighed the anti-competitive aspects and that the imposition of protective conditions on behalf of competing lines[4] would foster competition. 331 I.C.C. at 281. In

---

* District Judge Joel M. Flaum of the Northern District of Illinois is sitting by designation.

1. *Great Northern Pacific & Burlington Lines, Inc.—Merger, etc.—Great Northern Ry. Co., et al.,* 331 I.C.C. 228 (1967) and 331 I.C.C. 869 (1968).

2. *United States v. United States,* 296 F.Supp. 853 (D.D.C. 1968).

3. *United States v. I.C.C. ("Northern Lines Merger Cases"),* 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970).

4. The Milwaukee received several protective conditions which it requested including: (1) opening of 11 new gateways; (2) entry into Portland and trackage rights between Longview Junction and Portland; (3) Renton-Snohomish and Everrett-Bellingham trackage rights; (4) extension of Milwaukee service to Billings, Montana; (5) elimination of dual switching charges; (6) restoration of rate relationships.

addition to imposing protective conditions, the ICC *sua sponte* imposed Condition 33 which states:

> The Commission shall retain jurisdiction over these proceedings for a period of 5 years following consummation of the transactions herein authorized, or such other period as the Commission, for good cause shown, may hereafter prescribe, for the purpose, among others, of considering petitions, under section 5(2)(d) of the act, by any railroad in the territory involved requesting inclusion in the merger so authorized. The Commission shall also retain jurisdiction over these proceedings for a period of 5 years following consummation of the transaction herein authorized, or such other period as the Commission, for good cause shown, may hereafter prescribe, to impose such just and reasonable conditions upon petition by any party in interest, or on its own motion, after hearing, as may be necessitated by any cumulative or crossover problems stemming from approval of this merger and any other transaction authorized under section 5 with respect to the territory involved. Consummation of the transactions herein authorized shall constitute irrevocable assent by applicants to the power of this Commission to impose, after hearing, such just and reasonable conditions as may be necessary or appropriate.

331 I.C.C. at 359 and 879.

Although the Milwaukee attempted to take advantage of the protective conditions authorized by the BN merger, its competitive position *vis-à-vis* the BN apparently did not improve. As a result, on March 9, 1973, the Milwaukee filed for inclusion in the BN pursuant to Condition 33. The Milwaukee

and the BN then engaged in joint study to analyze the possibility of an agreement to consolidate. This effort continued into 1976 without success. In March 1975, however, the Milwaukee renewed its request for inclusion because the five-year period in Condition 33 was expiring. The ICC held that the Milwaukee's 1973 petition was timely filed under Condition 33 and ordered the issues to be set for a hearing. A prehearing conference was held on March 23, 1976, before an administrative law judge (ALJ). He concluded that the Milwaukee had effectively engaged the ICC's jurisdiction under Condition proposals.[5] He also ordered that the Milwaukee file a separate formal application for inclusion pursuant to the new amendment to § 5(2) of the Act and pertinent regulations "as may hereafter be amended in accordance with" the new amendment.[6] The ICC affirmed this order.

The Milwaukee filed a new application for inclusion on July 1, 1976, which the ICC rejected without prejudice as incomplete. The ICC delineated the information the renewed application should contain and ordered the Milwaukee to commence discovery, if necessary, to obtain the information required. The BN, however, refused to respond to the Milwaukee's discovery requests on the ground that the ICC lacked jurisdiction under Condition 33 to require inclusion of the Milwaukee. The Milwaukee moved to compel discovery. The ALJ denied the discovery motion on November 11, 1976, essentially on the ground that a massive legislative investigation was needed to shape railroad merger policy and thus that an adjudicatory decision to allow this inclusion would be improper.

**5.** He ordered that the Milwaukee's petition for additional protective conditions be held in abeyance pending a decision on the inclusion issue.

**6.** Section 402(b) of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. 94–210 (Feb. 5, 1976) (4R Act) amended § 5(2) of the Act adding § 5(2)(g). This amendment prescribes a mandatory schedule for processing railroad consolidation matters.

The regulations then effective for consolidation cases were at 49 C.F.R. § 1111. Regulations pursuant to the new amendment were proposed on May 26, 1976. 41 Fed.Reg. 21481. The new regulations, as subsequently amended, did not become effective until March 17, 1977. 42 Fed.Reg. 14870. The Milwaukee, however, had obtained from the ICC an order stating that if it prepared a new application in substantial compliance with the proposed regulations, it would qualify for filing.

Notwithstanding the denial of discovery, the Milwaukee filed a revised application on November 30, 1976. The ICC tentatively rejected the application on December 30, 1976, pending a decision on the discovery motions. Significantly, the ICC stated that the deficiencies in the application related to information which was requested in the Milwaukee's abortive discovery attempts. It set oral argument to consider "discovery questions, the jurisdictional issues relative to Condition 33, and other legal issues which may be preliminarily disposed of . . . ." These issues were addressed during oral argument on January 26, 1977, and on February 16, 1977, the ICC issued an order denying on the merits the Milwaukee's petition for inclusion. 348 I.C.C. 821 (hereinafter February 16, 1977, Order). The Milwaukee filed a petition for reconsideration and/or clarification which the ICC denied. Fin. Doc. No. 21478 (hereinafter September 16, 1977, Order).[7]

## II.

Before addressing the major arguments raised by the Milwaukee, we must resolve a jurisdictional issue raised by the intervenors, the BN and the Soo Line Railroad Company. These intervenors argue that the ICC lacked jurisdiction to impose Condition 33 and thus that it lacked jurisdiction to take any actions pursuant to that condition.[8]

The premise of their argument is that the ICC's authority is limited by statute and that the relevant statute, 49 U.S.C. § 5(2)(d), does not authorize it to consider inclusion petitions filed after the merger. That statute provides:

> The Commission shall have authority in the case of a proposed transaction under this paragraph [2] involving a railroad or railroads, *as a prerequisite to its approval* of the proposed transaction, to require, upon equitable terms, the inclusion of another railroad or other railroads in the territory involved, upon petition by such railroad or railroads requesting such inclusion, and upon a finding that such inclusion is consistent with the public interest.

49 U.S.C. § 5(2)(d) (emphasis added). As the intervenors construe this statute, the ICC had authority to require inclusion of the Milwaukee in the BN merger prior to approval of the merger; it had no authority, however, to require inclusion after it approved the merger, and therefore lacked jurisdiction to impose a condition giving it such authority.

The Milwaukee's initial response to this collateral attack on the ICC's subject matter jurisdiction to impose Condition 33 is that the issue is res judicata. Condition 33 was an important aspect of the ICC's authorization of the BN merger in 1967 and that authorization was affirmed by the district court and the Supreme Court.[9] Although the ICC's jurisdiction to impose Condition 33 was not raised or litigated in these prior proceedings, the BN's corporate predecessors certainly had an opportunity

---

7. In this order, the ICC clarified that its initial order also denied the Milwaukee's alternative petition for additional protective conditions.

8. The ICC does not join in this argument. It has maintained throughout these proceedings that it had jurisdiction to impose Condition 33. Indeed, it has even conceded that the Milwaukee could engage that jurisdiction.

> As previously noted, in our order of June 6, 1976, we determined that the Milwaukee's petition of April 2, 1973, effectively engaged our reserved jurisdiction under condition 33. Having reexamined this issue in the light of the extensive arguments of the parties, we adhere to that determination.

348 I.C.C. at 829. *But see* discussion in text *infra* at section IV.

9. The district court addressed Condition 33 specifically at 296 F.Supp. at 874–75. Interestingly, the BN (its corporate predecessors) did not contest the ICC's authority to impose Condition 33 until relatively recently. In its brief to the district court it stated:

> Although the Northern Lines merger does not involve unresolved problems such as the inclusion of another railroad, there can be no doubt that the Commission has power to impose reservations of jurisdiction and that it has done so out of an abundance of caution.

Brief of Great Northern Railway Co., et al., Intervening Defendants, *United States v. United States*, 296 F.Supp. 856 (D.D.C. 1968), at 95.

to litigate it. Generally, a party who has an opportunity to contest subject matter jurisdiction but fails to do so either in the initial proceeding or on direct appeal cannot collaterally attack the judgment. *See Jackson v. Irving Trust Co.*, 311 U.S. 494, 503, 61 S.Ct. 326, 85 L.Ed. 297 (1941); *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 375, 60 S.Ct. 317, 84 L.Ed. 329 (1940). This rule is subject to exceptions if the policy underlying the doctrine of res judicata is outweighed in the particular case by the policy against permitting the court to act beyond its jurisdiction. Restatement of Judgments, § 10 (1942). The resolution of this issue is further complicated by the fact that the initial proceeding was before an administrative agency rather than a court. *See Developments in the Law—Res Judicata*, 65 Harv.L.Rev. 818, 865 (1952).

■ We need not resolve this issue, however, because we hold that the ICC had jurisdiction to impose Condition 33. Section 5(2)(d) gives the ICC authority in a railroad merger proceeding to require the inclusion in the merged line of another railroad in the same territory "as a prerequisite to its approval" of the merger. In the present case, the ICC merely conditioned its approval of the merger on, *inter alia*, a five year reservation of jurisdiction to consider § 5(2)(d) petitions for inclusion of other railroads in the territory. The ICC has such authority. Section 5(2)(b) provides in part that the ICC shall approve a proposed merger if it finds that

> subject to such terms and *conditions* and such modifications as it shall find to be just and reasonable, the proposed [merger] . . . will be consistent with the . public interest, . . .

[Emphasis added.] Condition 33 is a condition which the ICC imposed as being con-

sistent with the public interest. It cleared the way for the ICC to proceed with the authorization for an important merger, thereby furthering the Congressional policy of "encouraging consolidation of the Nation's railroads into a 'limited number of systems,'"[10] while at the same time retaining the power to broaden the scope of the merger through subsequent inclusions that were shown to be in the public interest. *See United States v. United States*, 296 F.Supp. at 874–75. This approach, moreover, is not inconsistent with or precluded by the language of § 5(2)(d) because that provision does not limit or preclude the imposition, as a condition to the consolidation, of the reservation of post-consolidation jurisdictional power. Indeed, the ICC has on several occasions utilized such conditional approval. This has been applicable to inclusions as well as to other matters.[11] Mr. Justice Brennan addressed this power approvingly in *B. & O. R. Co. v. United States*, 386 U.S. 372, 404–05, 87 S.Ct. 1100, 1116, 18 L.Ed.2d 159 (1967) (Brennan, J. concurring):

> My disagreement is not with the proposition that the Act vests wide discretion in the agency [ICC] to allow a merger to go forward while conditions as to inclusion are worked out. The Commission has broad authority to approve transactions "subject to such terms and conditions and such modifications as it shall find to be just and reasonable . . . .," § 5(2)(b), and "may from time to time, for good cause shown, make such orders, supplemental to any order made under paragraph (1), (2), or (7), of this section, as it may deem necessary or appropriate," § 5(9).

We, therefore, reject the intervenors' argument that the ICC lacked subject matter jurisdiction to impose Condition 33.

---

10. *Penn Central Merger Cases*, 389 U.S. 486, 492–93, 88 S.Ct. 602, 605, 191 L.Ed.2d 723 (1968). The Congressional directive for a limited number of railroads dates back over 50 years, the only change being the means of achieving that goal. *See generally St. Joe Paper Co. v. Atlantic Coast Line R. Co.*, 347 U.S. 298, 315–21, 74 S.Ct. 574, 98 L.Ed. 710 (1954).

11. *See, e. g., Penn-Central Merger Cases*, 389 U.S. 486, 495, 521, 88 S.Ct. 602, 19 L.Ed.2d 723 (1969); *B. & O. R. Co. v. United States*, 386 U.S. 372, 389, 404–05, 87 S.Ct 1100, 18 L.Ed.2d 159 (1967); *Railway Labor Ass'n v. United States*, 339 U.S. 142, 70 S.Ct. 530, 94 L.Ed. 721 (1950).

## III.

One of the Milwaukee's primary arguments in this case is that the ICC, in dismissing its application for inclusion and petition for additional traffic conditions, failed to make findings under § 5(2)(c) of the Act. Specifically, the Milwaukee argues that the ICC's order failed to assess the "effect of the proposed transaction upon adequate transportation service to the public," § 5(2)(c)(1), and "the effect upon the public interest of the inclusion, or failure to include, other railroads in the territory involved in the proposed transaction." § 5(2)(c)(2).

We agree that the ICC did not make such findings in the order now under review, but the statute requiring such findings does not apply to the ICC's dismissal of a petition filed pursuant to Condition 33. Section 5(2)(c) of the Act requires certain findings when the ICC authorizes a merger as it did in 1967 when it authorized the BN merger. The statute, however, does not require the ICC to make these findings whenever it considers an application for inclusion pursuant to a condition imposed on the approval of the consolidation.

The Milwaukee argues that the ICC never made these findings before it authorized the BN merger in 1967 and that in lieu of those findings it imposed Condition 33 which postponed the findings requirement. This argument is unpersuasive for several reasons. First, the ICC would not be expected to have made extensive findings regarding the effect on the public interest of an inclusion of another railroad because neither the Milwaukee nor any other railroad had petitioned for inclusion during the BN merger proceedings and the ICC cannot compel an unwilling railroad to merge. *See St. Joe Paper Co. v. Atlantic Coast Line R. Co.*, 347 U.S. at 310, 74 S.Ct.

574. We, of course, do not suggest that the ICC could approve the merger without making any such findings. Second, if in fact the ICC failed to make adequate findings when it authorized the BN merger,[12] those deficiencies should have been raised on review of the merger in the district court or Supreme Court where the Milwaukee was a party. Third, a more logical interpretation of the reason for Condition 33 is that it was imposed to give the ICC some flexibility for some time after it approved the merger, and not to defer statutory findings. Given the size and complexity of the merger, and the rather uncertain climate or railroad reorganization throughout the territory at the time, the ICC merely thought it in the public interest to be able to authorize inclusions subsequent to the merger if it subsequently appeared that such inclusions were appropriate. The findings required by § 5(2)(c), however, apply only to the approval of the merger, not thereafter.

That the ICC was not required to make § 5(2)(c) findings does not absolve it of its duty to make a finding that the proposed inclusion is consistent with the public interest if it decides to require inclusion. *See* Condition 33 and § 5(2)(d).

Accordingly, the ICC's failure to make § 5(2)(c) findings in denying the Milwaukee's application for inclusion under Condition 33 was not arbitrary, capricious, or an abuse of discretion.

## IV.

The Milwaukee next argues that the ICC failed to give adequate notice prior to the January 26, 1977, oral argument or, indeed, prior to its summary order on February 16, 1977, that it was considering the merits of the Milwaukee's application for

---

**12.** Although we need not decide whether the ICC made sufficient findings in approving the BN merger, it appears to have, and the three-judge district court so found. That court set forth the full statutory provisions of § 5(2), including the considerations to which the ICC "shall give weight" under § 5(2)(c). It discussed those considerations and stated, "We

conclude that in giving its approval [of the BN merger] the Commission was guided by the applicable legal principles and made findings, supported by substantial evidence, requisite to the validity of its action," 296 F.Supp. at 856, and "[i]t is seen from the foregoing that the findings essential to approval of the transactions were made." *Id.* at 862.

inclusion and petition for additional protective conditions. The ICC's initial response to this argument is that the notice requirements of the Administrative Procedure Act, 5 U.S.C. §§ 553(b) and 554(b) do not apply because § 553(b) applies only to rulemaking and § 554(b) applies only to agency adjudication "required by statute to be determined on the record after opportunity for an agency hearing . . . ." The instant proceedings clearly were not rule-making proceedings. As to § 554(b) notice, we agree with the ICC that this provision does not apply because the instant proceedings were pursuant to a postconsolidation condition and not an "adjudication required by statute to be determined on the record . . . ."

■ The analysis, however, does not end with the examination of these notice requirements of the APA. Fundamental fairness in administrative proceedings requires notice clearly informing a party of the proposed action and the basis for that action. *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *See also* Friendly, *"Some Kind of Hearing,"* 123 U.Pa.L.Rev. 1267, 1280 (1975). In *Hess & Clark, Division of Rhodia, Inc. v. F. D. A.*, 161 U.S.App.D.C. 395, 404, 495 F.2d 975, 984 (1974), the court noted that agencies, similarly to courts, must provide notice that comports with fairness.

A notice that may be "adequate" for the purpose of scheduling a hearing is not necessarily adequate for the purpose of beginning a summary judgment procedure. The difference is well known to the law. While a broad complaint may be legally adequate for the purpose of initiating a lawsuit and trial, the Federal Rules of Civil Procedure do not permit a summary procedure to be used unless a motion is made which specifically sets forth the uncontested facts that warrant summary disposition. *See* Rule 56.

Of course, administrative agencies are not bound by the same details of procedure as the courts. But the agencies are governed by the same basic requirements of fairness and notice and these include specificity of notice and opportunity to respond if what is instituted is intended to be a procedure for summary disposition without hearing.

In light of these important procedural requirements, we are of the opinion that the ICC's action in dismissing the Milwaukee's application for inclusion and petition for additional protective conditions without adequate notice was arbitrary and capricious.

A review of the ICC's orders in this case reveals the unfair and capricious conduct. After negotiations between the Milwaukee and the BN had proved unsuccessful, the Milwaukee renewed its request to the ICC for inclusion, or alternatively, for additional traffic protective conditions. On July 21, 1975, the ICC acknowledged that the Milwaukee had filed a timely petition for inclusion and ordered that "the Milwaukee's request for inclusion in Burlington Northern be assigned for public hearing . . . ." An ALJ held a pre-hearing conference after which he stated that the Milwaukee "has a right to be heard on its proposals," and that "the issues presented by the Milwaukee Road's proposed inclusion in the Burlington Northern are of such public importance and complexity that they should be presented and evaluated in the framework of a formal new application under section 5(2) of the act." The ICC affirmed this order in all respects on June 9, 1976, stating that the "Findings and Order On Prehearing Conference prescribe a procedure that will adequately serve the public interest in a prompt, fair, and efficient disposition of the matters presented . . . ."

The ICC instructed the Milwaukee regarding the proper information to be included in its revised application and ordered it to begin discovery to obtain the requisite information. When the BN refused to comply with discovery requests, and the ALJ refused to compel discovery, the Milwaukee filed its application without the information it needed from the BN.

On December 30, 1976, the ICC tentatively rejected the application pending its decision on the Milwaukee's motion to compel discovery. It also set oral argument "to consider the issues involved in this proceeding, including the discovery questions, the jurisdictional issues relative to Condition 33, and such other legal issues which may be preliminarily disposed of . . .." At this point, the Milwaukee could not but assume that the hearing would not encompass an argument on the merits of inclusion, but would involve only preliminary issues. The conduct of the hearing would not have dispelled such an assumption, and indeed, would have reinforced it. At one point during the hearing, counsel for the Soo Line Railroad Company attempted to address the merits and was cut off by ICC Commissioner Murphy who defined the scope of the hearing:

> Mr. Peterson: Once again, from my view of the application and accompanying materials, there is nothing in there on cost. They have a lump sum figure of 40 per cent—

> Commissioner Murphy: May I interrupt. Aren't you going far afield of what was to be argued here today?

> Mr. Peterson: No, sir, I don't think so. Mr. Auerbach [counsel for the Milwaukee] spent a great deal of time discussing whether they had substantially complied, and I am responding to that argument, Commissioner Murphy.

> Commissioner Murphy: Maybe he went afield, too, but you have two questions that I understood here today. The first was jurisdiction, and the second was the discovery rule.

January 26 Oral Argument Tr. at 73.

Thus, after this hearing the Milwaukee had every reason to believe that if it prevailed on the jurisdictional issue, the ICC would, as it indicated as early as June 9, 1976, conduct a hearing on the merits. Instead, on February 16, 1977, the ICC issued its order dismissing the Milwaukee's petition on the merits. The order stated that inclusion pursuant to Condition 33 is conditioned on a showing that the Milwaukee's financial or operational difficulties "stem from the Northern Lines merger." Nothing in the language of Condition 33 explicitly suggests such a requirement, and even if the ICC could fairly impose such an interpretation on Condition 33, it never gave the Milwaukee an opportunity to make this showing. In fact, the Milwaukee argues that its financial difficulties are directly linked to the merger. At least, it should be given an opportunity to offer proof on the issue.[13]

In the denial of the Milwaukee's petition for reconsideration, the ICC clarified its interpretation of Condition 33, stating that:

> a carrier must establish that it has been *substantially harmed* by the merger in which it seeks to be included in order to avail itself of Condition 33.

> *Substantial harm* resulting from the merger is the main ingredient of the prima facie case that Milwaukee had to establish to come within Condition 33 and be entitled to further proceedings.

September 16, 1977, Order at 13 [emphasis added]. Here again we think the Milwaukee should have been given an opportunity to be heard on this newly-imposed substantial harm test.

Then, in a cryptic finding in this same order, the ICC appears to elevate this "substantial harm" standard to a jurisdictional prerequisite.[14] This contravened numerous prior findings in which the ICC had concluded that the Milwaukee had effectively

---

13. The Milwaukee contends that its application for inclusion addressed this issue and that the ICC's finding to the contrary is erroneous. If the Milwaukee had had adequate notice that this was to be considered, it could have made a specific offer of proof.

14. We find that the Milwaukee was required to show by this stage of the proceeding, that its inability to compete with, and consequent request to be included in, the BN results from the Northern Lines merger. *We further find that Milwaukee has failed to make that jurisdictional showing* and thus is not entitled to any further proceedings on its petition for inclusion.

September 16, 1977, Order at 15 (emphasis added).

engaged the ICC's jurisdiction. For example, in the February 16, 1977, Order, the order which the Milwaukee sought to have reconsidered, the ICC stated that "the Milwaukee's petition of April 2, 1973, effectively engaged our reserved jurisdiction under condition 33." Moreover, in the same September 16 Order in which it appears to make the "substantial harm" standard an element of jurisdiction, it explains that the denial of the Milwaukee's application for inclusion was on two grounds, the first being that:

> although Milwaukee had procedurally *engaged the reserved jurisdiction*, it had failed to establish substantively that its proposal comes within the limited scope of Condition 33.

September 16, 1977, Order at 7 (emphasis added).

To add to this confusion, the ICC at oral argument and in its brief before this court has conceded that it had jurisdiction to consider the Milwaukee's petition. As a result, we assume that the cryptic reference to jurisdiction in the September 16, 1977, Order may be disregarded and does not reflect the position of the ICC. We note, however, that this merely adds to our conclusion that the ICC acted arbitrarily.

The ICC's position, as far as we can determine, is that although it had the jurisdiction to consider the Milwaukee's petition for inclusion, the Milwaukee does not fall within the "limited substantive scope of Condition 33" because it has not established that it has been substantially harmed by the merger. *See Seaboard Air Line R. Co. —Merger—Atlantic Coast Line*, 320 I.C.C. 122 (1963). Although such an interpretation of Condition 33 appears to us to go well beyond the plain language of the condition, we defer to the ICC's discretion in such matters and merely require that it provide the Milwaukee with notice and an opportunity to be heard regarding compliance with this standard.

Accepting, as we do, that the ICC had jurisdiction to decide the merits of the Milwaukee's inclusion request, we cannot accept the ICC's statement that

[u]nder the circumstances, we do not believe that Milwaukee was surprised by the topics discussed . . . by the Commission in its report of February 16, 1977.

We find that the order of December 27, 1976 [December 30, 1976], gave adequate notice to Milwaukee that the denial of its petition for inclusion would be considered at the oral argument and a denial was a potential result of Commission deliberations following the argument.

September 16 Order at 10. We think it is quite clear that the only reasonable interpretation of the orders and conduct of the ICC was that it intended the January 26 oral argument to address only preliminary matters and that it was to be followed by a hearing on the merits.

The ICC's decision on the merits without adequate notice was particularly unfair given the interest at stake. Where the interest at stake is substantial, the need for precision in notice is great. The most stringent notice requirements are imposed in cases involving possible restrictions on liberty, *e. g., Hamling v. United States*, 418 U.S. 87, 117–18, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1973), but courts have also recognized the need for precise notice where substantial economic detriment is possible. *Cf. Texaco, Inc. v. F. P. C.*, 412 F.2d 740 (3d Cir. 1969). The economic impact on the Milwaukee resulting from the ICC's denial of inclusion certainly must be considered significant.

For these reasons, we hold that the ICC's actions in dismissing on the merits the Milwaukee's application for inclusion without adequate notice that the merits were being considered and without informing the Milwaukee that it must meet the "substantial harm" standard to make a prima facie case for inclusion, were arbitrary, capricious, and an abuse of discretion. We, therefore, remand the case to the ICC for proceedings consistent with this opinion. The ICC on remand should provide adequate notice to the Milwaukee and permit it a reasonable opportunity to present its case on the merits. The ICC has no statutory duty under § 5(2)(c) to make findings or

hold hearings because this is not a preconsolidation statutory proceeding. The ICC must, however, devise some type of fair proceeding consistent with Condition 33 to evaluate and decide the Milwaukee's application for inclusion. Although this responsibility lies within the ICC's discretion, we note that any type of summary procedure which in essence denies the Milwaukee an opportunity to be heard on the merits would be an abuse of that discretion, especially in light of the weighty public interest concerns that accompany an inclusion decision of this sort.[15]

A similar notice deficiency occurred with respect to the Milwaukee's alternative petition for additional traffic protective conditions. Prior to the ICC's September 16, 1977, Order, which explained that this alternative petition was denied on the ground that it did not meet the requirements of Condition 33, the ICC had withheld a decision on this petition pending disposition of the inclusion petition. Because the Milwaukee was given no notice regarding the ICC's consideration of the merits of the inclusion petition, it was similarly surprised and harmed by the disposition of the alternative petition. Adequate notice and procedures as discussed above will remedy this problem on remand.

## V.

The Milwaukee also argues that the ICC improperly accepted an ex parte memorandum from the Director of the Rail Services Planning Office that addressed the pending issues before the ICC in this case. This memorandum was apparently submitted to one commissioner of the ICC on December 15, 1976, but not made known to

the Milwaukee. We, of course, do not condone such ex parte communications in agency proceedings, see Home Box Office, Inc. v. F. C. C., 185 U.S.App.D.C. 142 at 186, 567 F.2d 9 at 53 (1977), but since all parties are now apprised of this memorandum, it is no longer ex parte and will thus threaten no prejudice to the procedures on remand.

Petition Granted and Case Remanded.

**15.** Courts have recognized that "basic considerations of fairness may dictate procedural requirements not specified by Congress . . ," and that "[t]he goal is rather to insure that administrators provide a 'framework for principled decision-making'—a framework that is appropriate for the issue at hand." *O'Donnell v. Shaffer*, 160 U.S.App.D.C. 266, 269, 491 F.2d 59, 62 (1974).

We also note, however, that "the formulation of procedures [within administrative agencies] was basically to be left within the discretion of the agencies." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). Thus we do not prescribe the exact nature of the notice requirement nor do we prescribe the procedure by which the ICC should provide the Milwaukee with an opportunity to be heard. We leave these procedural matters to the discretion of the ICC, but nevertheless require that there be an appropriate exercise of that discretion.