**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: BULLDOG TRUCKING,
INCORPORATED,
Debtor.

LANGDON M. COOPER, Trustee for
Bulldog Trucking, Incorporated,                     No. 97-2209
Plaintiff-Appellee,

v.

PRODUCTIVE TRANSPORTATION
SERVICES, INCORPORATED,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CA-96-305-3-MU, CA-96-393-3, BK-90-31936, AP-92-3325)

Argued: March 2, 1998

Decided: June 22, 1998

Before WIDENER and MURNAGHAN, Circuit Judges, and
HILTON, Chief United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Widener and Chief Judge Hilton joined.

_____

**COUNSEL**

**ARGUED:** Robert Joseph Gallagher, M. SHIELDS GALLAGHER & GALLAGHER, P.C., Northampton, Massachusetts, for Appellant. Joseph Adam Hess, SHAWN, MANN & STEINFELD, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Joseph L. Steinfeld, Jr., John T. Siegler, SHAWN, MANN & STEINFELD, L.L.P., Washington, D.C.; Langdon M. Cooper, ALALA, MULLEN, HOLLAND & COOPER, P.A., Gastonia, North Carolina, for Appellee.

---

**OPINION**

MURNAGHAN, Circuit Judge:

In this case, we are called upon to decide whether a final unappealed judgment is rendered invalid by the district court's allegedly erroneous exercise of jurisdiction to determine defenses asserted under the Negotiated Rates Act of 1993 ("NRA"), Pub. L. No. 103-180, 1993 U.S.S.C.A.N. (107 Stat.) 2044. The case grows out of the bankruptcy of Bulldog Trucking, Inc. ("Bulldog"), a motor common carrier. The trustee in bankruptcy for Bulldog initiated an adversary proceeding against Productive Transportation, Inc. ("PTI"), to recover the difference between the tariff rate filed by Bulldog with the Interstate Commerce Commission ("ICC") and the lower rate actually paid by PTI for Bulldog's services. Summary judgment was awarded to the trustee, and PTI failed timely to appeal. PTI now presents a collateral challenge to the validity of the judgment, arguing that the district court lacked jurisdiction to determine defenses advanced by PTI pursuant to provisions of the NRA. PTI also appeals the district court's denial of a motion to compel the trustee to deposit judgment proceeds into court.

Having carefully considered PTI's arguments, we hold that the judgment is not vulnerable to collateral attack. Furthermore, we discern no error in the district court's denial of PTI's motion to require the trustee to deposit judgment proceeds into court. Therefore, we affirm.

2

I

Bulldog, a Georgia-based motor carrier, transported freight for PTI between February 28, 1988, and October 12, 1990. On December 11, 1990, Bulldog filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of North Carolina. The chapter 11 petition was converted to a chapter 7 liquidation on February 14, 1991.

On March 21, 1991, the bankruptcy court entered an order authorizing Trans-Allied Audit Company, Inc. ("Trans-Allied"), to conduct an audit of Bulldog's freight bills for the purpose of determining whether the rates billed conformed to the tariff rates filed by Bulldog with the ICC. Trans-Allied concluded, on the basis of the completed audit, that PTI owed Bulldog $45,047.37 in undercharges. After PTI refused to pay the freight charges, the trustee initiated an adversary proceeding against PTI seeking payment of $45,047.37 with interest.

PTI asserted a counterclaim against Bulldog, alleging that Bulldog's filed rates were unreasonable. Upon PTI's motion, and in light of the Supreme Court's decision in Reiter v. Cooper, 507 U.S. 258 (1993), the bankruptcy court entered an order referring the rate reasonableness issue to the ICC on April 13, 1993. The order permitted PTI to seek a determination by the ICC that Bulldog's filed rates were unreasonable, and an award of reparations in the amount of the difference between the tariff rate and the rate determined to be reasonable by the ICC. See 49 U.S.C. § 11705(b)(3) (1995).[1]

PTI and Bulldog were advised that the court would entertain motions for summary judgment on the undercharge claim. The court stated, however, that enforcement of a judgment in the trustee's favor would be stayed for twelve months or until the trustee presented evidence that additional delay was not warranted, to allow the ICC a reasonable opportunity to decide PTI's rate reasonableness counterclaim.

_____

[1] Section 11705 was omitted in the general revision of subtitle IV of title 49 of the United States Code effected by the ICC Termination Act of 1995 ("ICCTA"), Pub. L. No. 104-88, 1995 U.S.S.C.A.N. (109 Stat.) 803.

Cross-motions for summary judgment were filed by the trustee on June 8, 1993, and by PTI on October 28, 1993.

On December 3, 1993, before the bankruptcy court had taken any action regarding the parties' summary judgment motions, the NRA was signed into law. Although the NRA did not abrogate entirely a cause of action for undercharges, it afforded several remedies to shippers facing such suits. See Cooper v. B&L, Inc. (In re Bulldog Trucking, Inc.), 66 F.3d 1390, 1394 (4th Cir. 1995). Section 2(e) made it an unreasonable practice for a carrier to pursue claims for undercharges with respect to freight transported prior to September 1990, and vested the ICC with jurisdiction to determine whether an attempt to collect the filed rate constituted an unreasonable practice. NRA § 2(e)(1) (codified as amended at 49 U.S.C.§ 13711). Section 8 granted jurisdiction to the ICC to resolve disputes over whether shipments provided by a carrier were contract carriage or common carriage. NRA § 8 (codified as amended at 49 U.S.C. § 13710(b)). Shipments transported as contract carriage are exempt from the filed rate requirement; therefore, carriers may not claim undercharges for such shipments. See B&L, Inc., 66 F.3d at 1394-95.

On December 8, 1993, PTI moved the bankruptcy court to refer its unreasonable practice and contract carriage defenses to the ICC for adjudication along with the rate reasonableness counterclaim. The bankruptcy court denied PTI's motion on February 25, 1994, and PTI noted an interlocutory appeal to the district court.

On July 13, 1994, while PTI's interlocutory appeal was still pending before the district court, the bankruptcy court issued a Recommended Order and Memorandum Decision advising the district court to enter summary judgment in favor of the trustee. The district court adopted the proposed order and memorandum decision of the bankruptcy court in full on December 8, 1994.

The district court held that the antiforfeiture provisions of the bankruptcy code, see 11 U.S.C. §§ 541(c)(1) & 363(l), precluded the enforcement of § 2(e) of the NRA against the trustee. Therefore, the court concluded that the unreasonable practice defense was unavailable to PTI. The court further determined that § 8 of the NRA did not divest the district court of jurisdiction to decide the issue of contract

4

carriage. According to the district court, § 8 of the NRA was unen-forceable in bankruptcy because it conflicted with the jurisdictional provisions of 28 U.S.C. §§ 157 and 1334. After considering and rejecting PTI's contract carriage defense on the merits, the district court awarded summary judgment to the trustee.

Notwithstanding the continued pendency of PTI's counterclaim before the ICC, the district court directed that judgment be entered immediately and certified as final under Fed. R. Civ. P. 54(b). Acknowledging PTI's right to have the rate reasonableness claim determined by the ICC, however, the court stated that it would not rescind the April 13, 1993, order permitting PTI to pursue its counterclaim.[2] PTI failed timely to appeal the district court's final judgment.

Approximately six months later, in June 1995, the district court ordered that ten interlocutory appeals regarding the NRA's applicabil-ity in bankruptcy proceedings be stayed pending our decision in Cooper v. Stonier Transp. Group, Inc. (In re Bulldog Trucking, Inc.), 66 F.3d 1400 (4th Cir. 1995). Notwithstanding the entry of final judg-ment on the trustee's undercharge claim, PTI's interlocutory appeal of March 1994 was among those stayed by the district court.

In B&L, Inc. and Stonier, consolidated appeals arising out of the Bulldog bankruptcy proceedings, we considered whether the NRA was applicable in the bankruptcy context. We held, first, that the unreasonable practice defense afforded shippers by§ 2(e) did not vio-late the antiforfeiture provisions of the bankruptcy code. B&L, Inc., 66 F.3d at 1398; Stonier, 66 F.3d at 1402. Second, we determined that the NRA required referral of a defense of unreasonable practice to the ICC for initial decision, subject to review by the court of original jurisdiction. B&L, Inc., 66 F.3d at 1398; Stonier, 66 F.3d at 1402 n.2. Finally, we concluded that referral of a contract carriage defense to

---

**2** We are perplexed by both parties' insistence on brief that the district court decided the merits of PTI's rate reasonableness claim when award-ing summary judgment to the trustee. The need to certify the judgment as final under Rule 54(b) arose precisely because the reasonable rates question remained pending before the ICC and was not adjudicated by the district court.

5

the ICC was mandated by § 8 of the NRA. B&L, Inc., 66 F.2d at 1399-1400; Stonier, 66 F.3d at 1402.

Following our decisions in B&L, Inc. and Stonier, the district court entered a general order remanding the ten stayed appeals to the bankruptcy court. On August 14, 1996, PTI filed a renewed motion to refer the contract carriage and unreasonable practice defenses to the Surface Transportation Board[3] for determination. The bankruptcy court denied PTI's motion on September 4, 1996, and the district court affirmed. The court reasoned that the defenses PTI sought to refer had already been determined in the summary judgment proceeding. Therefore, the court concluded, PTI was precluded by the doctrine of res judicata from raising the issues again.

PTI also sought an order requiring the trustee to deposit judgment proceeds collected from PTI into court pending determination of PTI's counterclaim by the ICC. The bankruptcy court denied PTI's motion on July 18, 1996, and the district court affirmed on July 30, 1997. PTI timely appealed.

II

We have jurisdiction of the appeal pursuant to 28 U.S.C. § 158(d). See Capitol Credit Plan v. Shaffer, 912 F.2d 749, 751 (4th Cir. 1990). "Because the district court sits as an appellate court in bankruptcy, our review of the district court's decision is plenary. In other words, we apply the same standard of review as the district court applied to the bankruptcy court's decision." Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties Ltd. Partnership), 99 F.3d 151, 154 (4th Cir. 1996) (citation omitted). The instant case presents questions of law, which we review de novo. Id.

_____

[3] The ICCTA provided for the dissolution of the ICC. ICCTA § 101, Pub. L. No. 104-88, 1995 U.S.S.C.A.N. (109 Stat.) 803, 804. In place of the ICC, Congress created the Surface Transportation Board within the Department of Transportation. ICCTA § 201, 49 U.S.C. § 701. For ease of reference, however, we refer to the agency as the ICC throughout this opinion.

A

PTI maintains that the district court erred in denying its renewed motion to refer the defenses of contract carriage and unreasonable practice to the ICC for decision. According to PTI, the final judgment that preceded PTI's renewed motion, which fully determined PTI's defenses, presents no bar to relitigation because the district court lacked subject matter jurisdiction to decide the issues. Relying on our decisions in B&L, Inc. and Stonier, PTI contends that by mandating the referral of unreasonable practice and contract carriage questions to the ICC, the NRA divests the district courts of jurisdiction to decide the defenses in the first instance.

Because PTI failed to present its arguments regarding the applicability of the NRA defenses to us in a timely appeal, however, we are faced not with the question whether the district court had jurisdiction to determine PTI's defenses but rather, whether that court's determination of the jurisdictional issue in its favor precludes relitigation of the question other than on direct review. See Stoll v. Gottlieb, 305 U.S. 165, 171 (1938).

"It is a fundamental precept that federal courts are courts of limited jurisdiction," constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute. Owen Equip. and Erection Co. v. Kroger , 437 U.S. 365, 374 (1978); see Randall v. United States, 95 F.3d 339, 344 (4th Cir. 1996), cert. denied, 117 S. Ct. 1085 (1997). A primary incident of that precept is our duty to inquire, sua sponte, whether a valid basis for jurisdiction exists, and to dismiss the action if no such ground appears. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); Baird v. Palmer, 114 F.3d 39, 42 (4th Cir. 1997). Litigants in federal courts have a corresponding right to challenge subject matter jurisdiction at any time, including on direct appeal. See Insurance Corp. v. Compagnie Des Bauxites, 456 U.S. 694, 701-02 (1982).

Nevertheless, federal courts have the authority to determine whether they have jurisdiction, and "[t]heir determinations of such questions, while open to direct review, may not be assailed collaterally." Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S.

7

371, 376 (1940). The rule applies with equal force to suits in which jurisdiction has been expressly determined and those in which resolution of the jurisdictional question is merely implicit. See Compagnie Des Bauxites, 456 U.S. at 702 n.9 ("A party that has had an opportunity to litigate the question of subject matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment.") (emphasis added); Stoll , 305 U.S. at 171-72 ("Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter."). The rationale for a general prohibition against collateral attacks was articulated by the Supreme Court in Stoll:

> It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has had his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined.

Stoll, 305 U.S. at 172.

The rule of finality has yielded only to narrow exceptions that give effect to substantial concerns of public policy. See Chicago, Milwaukee, St. Paul and Pacific R.R. Co. v. United States , 585 F.2d 254, 258 (7th Cir. 1978); United States v. Eastport S.S. Corp., 255 F.2d 795, 803 (2d Cir. 1958). Mere error in the exercise of jurisdiction will not render a prior judgment invalid. "A court has the power to determine its own jurisdiction and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void." Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir. 1972); see Hooks v. Hooks, 771 F.2d 935, 949-50 (6th Cir. 1985).

In Kalb v. Feuerstein, 308 U.S. 433 (1940), the Supreme Court held that the constitutional grant to Congress of the exclusive power to regulate bankruptcy empowered Congress to oust the jurisdiction of state courts over bankruptcy matters by vesting exclusive jurisdiction in the federal courts, and thus to render state court judgments purporting to decide bankruptcy questions vulnerable to collateral

8

attack. Id. at 438-39. The Court explained that fundamental principles of federalism outweighed the interest in finality:

> It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally. . . . The States cannot, in the exercise of control over local laws and practice, vest state courts with the power to violate the supreme law of the land.

Id. at 438-39 (footnotes omitted). The Court has also invalidated a judgment on collateral review when the earlier exercise of jurisdiction violated principles of sovereign immunity. United States v. United States Fidelity & Guar. Co., 309 U.S. 506, 514 (1940) (holding that "[c]onsent alone gives jurisdiction to adjudge against a sovereign," and "[a]bsent that consent, the attempted exercise of judicial power is void.").

The Second Restatement of Judgments establishes a presumption of finality, subject to three narrow exceptions. A collateral attack on the judgment for lack of subject matter jurisdiction is prohibited unless: (1) the exercise of jurisdiction constituted a "manifest abuse of authority"; (2) "allowing the challenged judgment to stand would substantially infringe the authority of another tribunal or agency of government"; or (3) "the judgment was rendered by a court lacking capability to make an adequately informed determination" as to its own jurisdiction. Restatement (Second) of Judgments§ 12 (1982); see Blinder, Robinson & Co. v. SEC, 837 F.2d 1099, 1104 (D.C. Cir. 1988); Hodge v. Hodge, 621 F.2d 590, 593 (3d Cir. 1980).

B

With these principles in mind, we consider PTI's arguments. PTI first contends that § 2(e)(1), which vests jurisdiction in the ICC to decide whether a carrier's attempt to collect a filed rate constitutes an

9

unreasonable practice, placed that issue beyond the jurisdiction of the district court. According to PTI, the district court's exercise of jurisdiction was a "manifest abuse of authority." Alternatively, PTI maintains that allowing the judgment to stand "would substantially infringe the authority" of the ICC.

PTI's argument is not well taken, for it misapprehends the nature of the district court's action. The court never reached the merits of PTI's unreasonable practice defense, but held at the threshold that the § 2(e) defense was unavailable in bankruptcy because it conflicted with the antiforfeiture provisions of the bankruptcy code. It is beyond dispute that whether statutory schemes are in conflict is a legal question entrusted to judicial resolution, not to agency determination. Because the district court had jurisdiction to construe the statutes in question, PTI's collateral attack on the judgment for want of subject matter jurisdiction is without foundation.

Next, PTI maintains that the district court lacked jurisdiction to decide PTI's contract carriage defense in the first instance. PTI relies on § 8 of the NRA, which provides that the ICC "shall have jurisdiction to, and shall, resolve" disputes over whether shipments provided by a carrier were contract or common carriage. The district court decided that the shipments here at issue were contract carriage after concluding that § 8 did not mandate referral of the issue to the ICC. We have since held that questions of contract carriage should be decided initially by the ICC, subject to later review by the courts, reasoning that § 8 creates presumptive primary jurisdiction in the ICC. B&L, Inc., 66 F.3d at 1399. Therefore, we agree with PTI that the district court erred in refusing to refer the contract carriage question to the ICC.

Nevertheless, we conclude that the error does not warrant setting aside an unappealed judgment. The district court's refusal to refer the issue of contract carriage was not a "clear usurpation of power" but was merely erroneous, resting as it did on a reasonable, albeit mistaken, interpretation of intersecting provisions of the NRA and other jurisdictional statutes.

Furthermore, we cannot agree with PTI that "allowing the judgment to stand would substantially infringe the authority" of the ICC.

10

Any improper exercise of jurisdiction necessarily intrudes on the power of another tribunal, but not every such intrusion implicates public concerns that outweigh the countervailing interest in finality. Mindful that Congress has expressly manifested an intent to entrust the initial decision of questions of contract carriage to the ICC, we nevertheless conclude that the district court's exercise of jurisdiction did not fundamentally disturb the distribution of governmental powers so as to require invalidation of the unappealed judgment challenged here.

III

Finally, PTI argues that the district court erred in denying PTI's motion to deposit the judgment proceeds into court pending resolution of its counterclaim before the ICC. PTI maintains that the Supreme Court's decision in Reiter v. Cooper, 507 U.S. 258 (1993), requires judgment proceeds to be deposited with the court while a shipper seeks a rate reasonableness determination.

In Reiter, the Court recognized that the entry of separate judgment in favor of an insolvent carrier could threaten a shipper's ability to collect reparations following a favorable decision by the ICC on a rate reasonableness claim. Id. at 270. Nevertheless, the Court refused categorically to prohibit the entry of separate judgment in favor of insolvent carriers, noting that remedies could be fashioned to protect the shipper's ability to collect reparations. Id. at 270-71. As an example, the Court suggested that a shipper could be directed to deposit the judgment with the court pending the outcome of the ICC reparations action. Id.

PTI seeks to transform the Court's example into an inflexible rule, arguing that the judgment proceeds must be deposited with the bankruptcy court until the ICC renders a decision in the rate reasonableness action. We do not believe that such a result is required by Reiter or warranted on the facts of this case. Almost five years have elapsed without decision by the ICC on PTI's claim against Bulldog for reparations. We also note that PTI's motion was filed only after the trustee had expended more than $12,000 in estate resources to collect the judgment. On those facts, we can discern no error in the district

11

court's decision to affirm the denial of PTI's motion by the bank-ruptcy court.

For the foregoing reasons, the orders of the district court are hereby

AFFIRMED.

12