**In re Robert Lee COURSEY and Anny Magda Coursey, Debtors.**

**Bankruptcy No. 80–02246–S–13.**

United States Bankruptcy Court, W. D. Missouri, S. D.

June 22, 1981.

Bob J. Keeter, Jones, Keeter, Karchmer, Nelms & Sullivan, Springfield, Mo., for Cummins Mid-America, Inc.

Gary A. Love, Springfield, Mo., for debtors.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

On July 21, 1980, Robert Lee Coursey, d/b/a Coursey Farm, and Anny Magda Coursey, his wife, filed a petition under Chapter 13 of the Code. The petition was filed to avoid a foreclosure. When the schedules were filed on August 28, 1980, they were accompanied by a statement that the debtors were not operating a business but were employees of the business known as Coursey Farms, a partnership owned by debtors' sons. This partnership subsequently filed a petition under Chapter 13 also, on October 20, 1980.[1] The Coursey plan was set for confirmation on January 22, 1981.

At the request of the principal creditor, the confirmation hearing was held on January 21, 1981, in connection with another matter involving the proceedings. The plan was confirmed at that time. At the time regularly scheduled for the confirmation hearing, an attorney for Cummins-Mid-America, Inc., appeared, announced that his client held a judgment against debtor Robert Coursey in the nature of an artisan's lien, not properly scheduled by debtors and that Cummins, therefore, objected to confirmation of the plan. Cummins thereafter filed a claim and a formal motion to set aside confirmation of the plan. Debtors objected to the proof of claim and disputed the allegation that this was a debt incurred personally by these debtors. That debt had been scheduled in the partnership proceeding and was scheduled by amendment in this proceeding, although debtors did not concede liability. Cummins' objection to confirmation and debtors' objection to proof of claim were set for hearing on February 23, 1981, at which time Cummins and debtors appeared by counsel. Evidence was heard and the matter continued to March 17, 1981. At that time debtors appeared in person, further evidence was heard and the matter taken under advisement pending the receipt of briefs which have now been filed.

The evidence shows that on August 19, 1980, a Kenworth truck was delivered by wrecker to Cummins. A caller identifying himself as Bob Coursey called that same day and advised Cummins that the transmission had fallen out of the truck and had broken the bell housing. The shop order reflected that Cummins was told to "check damage and inform customer cost of repairs." There is no written record reflecting that the customer was told the cost of repairs. Cummins' assistant manager testified that he told Robert Coursey the price of $4,500.00 for the work and was told to proceed. Robert said he was told the repairs would be about $2,500.00 but that he did not tell Cummins to proceed.

The work was done anyway. As part of that work, Robert Coursey took the transmission, which Cummins could not repair, to another shop, had it repaired, and returned it to Cummins for reinstallation in the truck. Repairs were completed on the 29th of August and Robert Coursey was advised the truck was ready. At that time Cummins had in its possession an unsigned check from Coursey Farms made out to Cummins in the amount of $4,500.00. Robert Coursey, his son Bobby and their respective wives, came to Cummins to pick up the truck.

When Robert Coursey arrived at Cummins, there was some discussion about the check. Various employees at Cummins were under the impression the check would not be paid by the bank upon which it was drawn. There was no evidence introduced

---

1. The issue raised by the filing of a Chapter 13 proceeding by a partnership was disposed of in that proceeding and a discussion of that matter is not pertinent here. See Section 109(c) and the Comment to Section 1304.

as to whether the check was good. In any event, after the discussion, Robert Coursey told his son to drive the truck out of the shop and he threatened to strike anyone who got in the way. The truck was taken and the check was never signed or presented for payment. No person representing Coursey Farms ever paid for the repairs to the truck.

Robert Coursey testified by deposition, introduced into evidence, that he gave a blank check to Cummins, that someone at Cummins filled it out, that he authorized no repairs and that he intended to have the work done in St. Louis. He also stated that the repairs were not done in a satisfactory manner and that he intended to sue Cummins. Except for some statements as to the nature of the repairs though, debtors introduced no evidence as to the cost of the additional work. He admitted making threats to a Cummins' employee but only, he said, after that person shoved him. The witnesses for Cummins deny that any of them made any assault against the Courseys.

Shortly thereafter Cummins filed suit in the Circuit Court of Greene County, Missouri, for the work and asserted an artisan's lien. Service was had upon Robert Coursey, who was identified in the petition as Bob Coursey, d/b/a Coursey Farms. Judgment was entered by default on November 12, 1980, in favor of plaintiff for $4,500.00 actual damages and $500.00 punitive damages and establishing the artisan's lien. This judgment was offered as basis for the claim made by Cummins in Debtors' Chapter 13 proceeding.

In their schedules, debtors make no mention of ownership of a Kenworth truck. They also denied having an interest in or being owners of the business known as Coursey Farms. When the truck was brought in to Cummins, no Coursey accompanied it. If Robert Coursey is responsible for the repairs, then the claim takes a different character than if it is to be paid from the Coursey Farms proceeding.

Cummins contends that the state court judgment is controlling as to the nature of the claim. In the face of this Court's assertion that it was obligated to determine the validity of the state court judgment in the bankruptcy proceeding, Cummins sought a writ of prohibition from the District Court to prevent an extrinsic evaluation. The District Court denied the motion, holding that Cummins had a clear remedy by appeal from an adverse judgment.

■ Where it is not clear from the state court proceedings that the issues essential to a judgment in a bankruptcy matter have been resolved in that proceeding, the bankruptcy court is obligated to hear such extrinsic evidence as is necessary to classify and to allow the claim. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re Whitmore*, 7 B.R. 835 (Bkrtcy. N.D.Ga.1980); *Matter of Eskenazi*, 6 B.R. 366, U.S. Bankruptcy Panels, 9th Cir. (1980). Here, issues of agency, apparent authority and the propriety of the repairs were put into question by both the Chapter 13 petition and the objection to the claim and these issues are not resolved by state court judgment which is devoid of findings of fact. This Court, therefore, must hear sufficient evidence to substantiate creditor's claim or debtors' defense.

Robert Coursey maintained that he did not authorize the repairs performed by Cummins. These statements were refuted by creditor's shop foreman, who knew Coursey from previous dealings and recognized his voice, and who testified that Coursey told him to go ahead with the repairs. Coursey's testimony was also contradicted by his conduct. He took the transmission to be repaired at Ozark-Kenworth, since Cummins did not do that type of work, and brought it back to be put back on the truck. If Cummins were not to repair the vehicle, it made no sense to repair the transmission since it would not operate if Cummins did not repair the housing. Coursey said he brought the transmission back to Cummins and left it, without identifying himself or in what vehicle the transmission was to be placed. Such a happening is not plausible. In addition, when Coursey came to get the truck on the 29th of August, 1980, he came

under the assumption the truck could be driven away under its own power. All of this evidence persuades that Coursey knew the truck was being repaired by Cummins, with his authorization.

The title to the truck was not introduced into evidence. It was supposedly owned by Coursey Farms, a partnership, and the Cummins shop order is made out that way. The check that was given had both Coursey Farms and Robert Coursey's name on it. The names Bobby Coursey and Gary Coursey also were printed on the check. All of the testimony shows that Robert Coursey dealt with Cummins as though he had the authority to contract for repairs to the truck. "One who acts as agent for another in making a contract is individually liable thereon if, at the time of making the contract, he fails to disclose his agency and the identity of his principal, regardless of whether or not he was authorized as agent to execute the contract." 3 Am.Jur.2d "Agency" § 317. To the same effect see *Receivables Finance Corporation v. Hamilton*, 408 S.W.2d 44 (Mo.1966). While the representations here were oral rather than written, the legal result is the same. The Court finds that Robert Coursey purported to contract for the repairs as though he were the owner of the truck, in other words, that he was "Coursey Farms".

Cummins argues that consideration of all of these issues is foreclosed by the state court judgment. The Court has already pointed that the judgment is not specific enough to resolve the particular issues raised by the objection to the claim. In addition, the judgment is void because taken during the pendency of the bankruptcy at a time when all actions by creditors were stayed. 2 Collier on Bankruptcy, ¶ 326.11 (15th Ed.). Section 362(a) of the Code provides, in part, that

"... a petition filed under section 301 ... of this title operates as a stay, applicable to all entities, of—

(4) any act to create, perfect, or enforce any lien against property of the estate, ..."

Here, the action to establish the artisan's lien was brought after the bankruptcy had been filed, even though Cummins did not know it. Actual knowledge is not necessary, except as an aspect of possible contempt, since the stay may act against the judgment as well as the creditor. All of the authorities cited by creditor in this regard discuss the consequences of obtaining a judgment in the absence of a stay. That is not the situation here. The stay created by Section 362 is pervasive and reaches this set of facts. Cf. *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) and *Robertson v. Interstate Securities Company*, 435 F.2d 784 (1971), *In re Murray*, 5 B.R. 732 (Bkrtcy.D.Md.1980). It may have been possible to avoid the affect of the stay by demonstrating that the truck against which the lien was asserted was not property of the estate but there is no such evidence before the Court.

Under Chapter 13, a debtor is required to live on a cash basis and incur no additional credit debt, except with the consent of the trustee. See Section 1305(c) and Section 1328(d). At the outset, the evidence indicates that repair of the truck was going to be a cash transaction, at least as far as Cummins was concerned. The consent of the trustee was not necessary. It was only after Coursey took the truck from Cummins without paying, that the repair work became a credit transaction. Under those circumstances, the creditor's claim cannot be barred, since it had no knowledge of the bankruptcy. See Section 1305(c). The claim then is allowed, but the question remains, for what amount?

The plan in this proceeding proposes payment of secured debts in full and unsecured debts at the rate of 10% of value. Debtor asserts that the Cummins claim is unsecured. Yet it is unlikely that Cummins would have done the work knowing that it would have only been paid 10% of its bill. Section 1305(a) contemplates the filing of postpetition claims for "consumer debt ... that is for property or services necessary for the debtor's performance under the plan." While there is some question as to

whether repair of a truck is a consumer debt, there is no question that the repair is necessary for the debtor's performance. The farm work requires the truck. In order for Robert Coursey to have funds to pay into the plan, the farm must operate. The complication arises because there is a failure of proof as to ownership of the truck, not as that proof relates to Coursey's liability as a purported principal, an issue already resolved herein, but as the debt fits into the plan.

In this particular case, repair of the truck has connotations of consumer debt, comparable to repair of a family automobile. This conclusion becomes more tenable in light of the concept of a business Chapter 13. Again, the analysis is clouded by the confusion of roles played by Robert Coursey, presenting himself to Cummins as owner of the vehicle but being in this proceeding as merely an employee of the partnership. Two statutory provisions, however, lead to the conclusion that the debt to Cummins should be scheduled at full value.

First, the claim that may be filed under Section 1305 has to be classified. In this instance, it would be classified as an administrative claim under Section 503(b)(1)(A) as an expense of preserving the estate. Cf. *In re Bullock Corporation*, 2 B.C.D. 286 (Bkrtcy.N.D.Tex.1976). Second, the debt is not dischargeable because it was a credit obligation incurred without the consent of the trustee. Section 1328(d). The debt is to be scheduled at the value of its benefit to the estate.

That value is $4,500.00. While there was testimony by Coursey that he was dissatisfied with the work, there is no evidence that whatever additional repairs he had performed were the result of faulty workmanship by Cummins or were related to the original damage. In addition, there was no evidence of the cost of those additional repairs. In light of the Court's conclusion that Coursey knew of the estimated cost of the repairs and consented to the work, the statement rendered by Cummins, in the absence of persuasive proof showing the work to be faulty, is conclusive as to value.

Debtors' objection to the claim is OVERRULED. Cummins is to have a priority claim to be paid in full in the sum of $4,500.00. This conclusion makes unnecessary any determination as to whether Cummins retains an artisan's lien in this case.

This Order constitutes Findings of Fact and Conclusions of Law as required by Rule 752, Rules of Bankruptcy Procedure.

SO ORDERED this 22nd day of June, 1981.