**In re Sonya CHANEY, Debtor.**

**Sonya Chaney, Movant**

v.

**Whitney Grant, Kathy Grant, Respondents.**

**No. 99–74135.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

March 29, 2004.

Joanna M. Campbell, Marsha Diane King, King and King, PC, Atlanta, GA, for Debtor.

James E. Dearing, Atlanta, GA, for Respondents.

Adam M. Goodman, Atlanta, GA, Chapter 13 Trustee.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

Debtor filed an objection to the proof of claim filed by Whitney and Kathy Grant. Hearing was held January 29, 2004. The testimony and other evidence at trial showed the following:

Postpetition, Debtor was threatened with foreclosure of her residence. When relating her plight to friends of the family, the Grants, Mr. Grant, who is also a real estate agent, offered to lend Debtor funds to save her residence from foreclosure, to allow Debtor to find a new place to live, and to rehabilitate the property so it could be sold. Mr. Grant's opinion was that Debtor's residence would "show" much better empty. Neither Debtor nor Mr. Grant sought or obtained permission of the Chapter 13 Trustee or the bankruptcy court for the postpetition loan. Although Mr. Grant is a real estate agent, he is young and apparently inexperienced, especially as relates to bankruptcy matters.

In connection with the loan, the Grants requested, received, and recorded a quit-

claim deed from Debtor. The explanation offered by the Grants for the quitclaim deed was to enable Mr. Grant to deal with utilities. Ultimately, after Debtor moved out and the repairs were completed, the residence was sold.

The Grants now seek to be paid the full amount of their claim, $21,428.73 [1], from the proceeds of the sale of the residence. Debtor objects on the grounds that a significant portion of the claim is for repairs that were not authorized by her. Debtor does not object to $14,839 of the claim.

■ Section 1305(a)(2) provides for filing of postpetition claims for consumer debt that is for property and services necessary for the debtor's performance under the plan. But § 1305(c) says such a claim shall be disallowed if the claimant "knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained." Although *Debtor* knew, or should have known, that prior approval by the Chapter 13 Trustee was required and practicable before she incurred the debt, the Grants did not know Debtor was prohibited from incurring debt without such approval.

In the case of *In re Coursey*, 11 B.R. 944 (Bankr.W.D.Mo.1981), postpetition, the debtor had a truck towed for repairs. The bill for repairs was $4,500. The creditor did not know of the debtor's bankruptcy case. The debtor picked up the truck without paying the bill.

The *Coursey* court held that the postpetition action to establish an artisan's lien was void as a violation of automatic stay. The court concluded, however, that the creditor's claim was a § 1305 claim because the truck was clearly necessary to

the debtor's performance under the plan and the creditor had no reason to know prior approval by the Chapter 13 Trustee was required. The debtor's assertion that the claim should have been classified as an unsecured claim, to receive 10% dividend under the debtor's Chapter 13 plan, was rejected by the court. The court concluded that the claim should be treated as § 503(b) administrative claim and paid at the full value to the estate, which was $4,500.

In the case of *In re Clayburn*, 112 B.R. 434 (Bankr.N.D.Ala.1990), the debtors incurred a postpetition obligation for car insurance without the knowledge or consent of Chapter 13 Trustee. The debtors told insurer that the premiums would be paid through their Chapter 13 plan, but the debtors did not modify the plan to provide for such payment. Chapter 13 Trustee objected to the insurance company's claim under § 1305 on the grounds that approval of the Chapter 13 Trustee was not sought. The court sustained the Chapter 13 Trustee's objection.

■ The requirement for obtaining prior approval for post-confirmation credit protects debtors, many of whom have already exhibited poor judgment in financial matters, from entering into ill-advised credit arrangements. Such oversight by the Chapter 13 Trustee will help debtors to break the "cycles of poor financial judgment" that may have led to the filing of their petitions in the first place. Additionally, requiring the approval of the trustee results in a reasoned decision that incurring additional debt is actually necessary to the debtor's performance under the plan, thus protecting not only the debtor, but all creditors whose claims are provided

---

1. The claims register shows that the Grants filed a claim for $24,000, but at trial claimed no more than $21,428.73.

for in the confirmed plan. *In re Bagby,* 218 B.R. 878 (Bankr.W.D.Tenn.1998).

In the instant case, no evidence was offered to suggest that any of Debtor's other creditors would be harmed by payment of the amounts claimed by the Grants. The Chapter 13 Trustee filed a Status Report March 15, 2004, which shows that all secured claims have been paid and the balance on hand held by the Chapter 13 Trustee is $39,480.23, of which $39,186.30 represents proceeds from the sale of Debtor's real property. The report's total of outstanding unpaid unsecured claims, including the Grants' claim, is $33,736.56.[2] Therefore, the Chapter 13 Trustee has sufficient funds on hand to pay in full all outstanding unsecured claims, including the Grants' claim, and the Chapter 13 Trustee's 5.6% fee, leaving a net balance of more than $5,000 that will be payable to Debtor. Any amount by which the Grants' claim is reduced will go into Debtor's pocket. Therefore, the protection of Debtor becomes the focus of the determination of whether the Grants' claim should be allowed.

The evidence elicited at the hearing showed that a benighted Debtor essentially gave the Grants *carte blanche* in connection with the repairs and rehabilitation of the residence. She did not monitor or ask for reports about how much money was being spent or for what repairs the funds were being spent. It appears she relied on the experience of Mr. Grant and her childhood friendship with Mrs. Grant. For example, Debtor now asserts that the funds expended for an exterminator were unnecessary. Logically, an expense for an exterminator is both reasonable and necessary in connection with the sale of any residence and, if not completed before closing, will be required before closing can

occur, thus potentially delaying a closing. It appears that Debtor's objections rose in strength and number as she recognized the amount of sale proceeds created by the belatedly unwanted repairs. Post-closing, Debtor appears as interested in benefitting from a distribution of sales proceeds as Debtor was uninterested in the repairs pre-closing.

Any portion of the Grants' claim as proved ($21,428.73) which is disallowed will constitute a windfall to Debtor. The evidence shows that the expenses incurred by the Grants resulted in a substantial increase in the value of the residence, so that as a result of the sale, Debtor realized significantly greater equity than she would have received without the rehabilitation. Debtor ceded to the Grants the right to use their best judgment in deciding which repairs and improvements were necessary to bring the highest and best price for the residence. From the sale proceeds, Debtor has already received the amount allowed under Georgia law as her exempt proceeds. Equity demands that, to avoid a windfall to Debtor, the full amount of the Grants' claim should be paid as a § 503(b) administrative expense. Accordingly, it is hereby

ORDERED that Debtor's objection to the Grants' claim is overruled. The full amount of the Grants' claim as proved, $21,48.73, shall be paid as a § 503(b) administrative expense.

---

2. This total includes the $24,000 amount shown on the Grants' proof of claim. The actual amount claimed by the Grants at trial, however, was $21,428.73.